**Clarence T. HATLESTAD, Appellant,**

v.

**Edward J. DERWINSKI, Secretary
of Veterans Affairs, Appellee.**

**No. 90–103.**

United States Court of Veterans Appeals.

Submitted Sept. 25, 1990.

Decided March 6, 1991.

As Amended May 31, 1991.

Ronald L. Smith, Washington, D.C., was on the brief, for appellant.

Raoul L. Carroll, Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, Andrew J. Mullen, Deputy Asst. Gen. Counsel, and Angela Foehl, Washington, D.C., were on the brief, for appellee.

Before KRAMER, MANKIN and STEINBERG, Associate Judges.

STEINBERG, Associate Judge:

This case involves an appeal by Clarence T. Hatlestad from a Board of Veterans' Appeals (BVA or Board) decision which concluded that he was not entitled to a total disability rating, for compensation purposes, based upon unemployability. The appellant was seriously wounded in combat during World War II. He claims he suffers from debilitating pain caused by his service-connected combat injuries and, as a result, is unable to work. Accordingly, he requests an increased disability rating of 100 percent. We remand this case with instructions.

## I. BACKGROUND

### A.

Mr. Hatlestad suffers from gunshot wounds to his abdomen and his left leg, as well as a land-mine injury, all incurred while on active duty. R. at 42, 48. As a result of the land-mine injury, his left leg is 2½ cm. shorter than his right leg and he has a marked deformity of his left heel. R. at 43, 48. To compensate for these disabilities he wears special shoes and walks with the aid of a cane. R. at 44, 76. He also has problems with his right leg and back that he attributes to his service-connected conditions. R. at 35–36, 42–44.

In addition, the veteran has several non-service-connected ailments. They include congestive heart failure, atrial fibrillation (very rapid uncoordinated contractions of the heart), hypertension, a thyroid tumor, gastric disorder, Meniere's disease (a disorder of the inner ear that is marked by recurrent attacks of dizziness and deafness), and diabetes mellitus. R. at 11–13, 63–64, 81–83. His heart condition, Meniere's disease, and diabetes are well controlled with medication. R. at 63.

It appears that the veteran had worked in various printing operations over many years, including work in sales and management and as a printer. In 1987 he was working as a pressman, loading paper and plates onto the press. R. at 22, 27. In September or October 1987, suffering from shortness of breath, he was admitted to the VA Medical Center (VAMC) in Fargo,

North Dakota. R. at 11. An electrocardiogram revealed atrial fibrillation, and a diagnosis of congestive heart failure was made. R. at 11–12. In light of the veteran's cardiac condition, the treating VA physician discussed with him and his family the physician's concerns about the veteran "continuing to work at a fairly strenuous job as a printer." R. at 13.

The veteran was terminated as a pressman sometime in 1987 because "altho[ugh] he kept trying" he was unable to do the work (R. at 27) and was reassigned to a sales position (R. at 22, 73). He quit several months later since his income (he received only commissions, no base salary) did not cover his expenses. R. at 73. He has apparently not worked since then.

In December 1988, the appellant sought a 100–percent rating based on unemployability. In a March 3, 1989, rating decision, the Fargo, North Dakota, Regional Office (RO) of the Veterans' Administration (now the Department of Veterans Affairs) (VA) denied that rating, but rated the appellant for disability compensation purposes as follows: continued a 40–percent rating for the left leg injury, a 10–percent rating for the gunshot wound to his abdomen, a 10–percent rating for traumatic arthritis in his right knee, and a noncompensable rating for hepatitis; awarded him a 20–percent rating for traumatic arthritis of the spine and a 10–percent rating for traumatic arthritis in his left knee; awarded him a total rating of 70–percent, retroactive to May 1988. R. at 48–49.

### B.

The BVA decision cites four different VA regulations as applicable to the veteran's claim regarding his alleged unemployability: 38 C.F.R. §§ 3.340, 3.341, 4.16, 4.19 (1990). *Clarence T. Hatlestad,* loc. no. 932444, at 5 (BVA Dec. 6, 1989). These regulations provide in pertinent part as follows:

§ 3.340 **Total and permanent total ratings and unemployability.**

(a) *Total disability ratings—(1) General.* Total disability will be considered to exist when there is present any impair-

ment of mind or body which is sufficient to render it *impossible for the average person to follow a substantially gainful occupation.* Total disability may or may not be permanent. Total ratings will not be assigned, generally, for temporary exacerbations or acute infectious diseases except where specifically prescribed by the schedule.

(2) *Schedule for rating disabilities.* Total ratings are authorized for any disability or combination of disabilities for which the Schedule for Rating Disabilities prescribes a 100 percent evaluation or, with less disability, where the requirements of paragraph 16, page 5 [§ 4.16, *infra*] of the rating schedule are present....

(3) *Ratings of total disability on history.* In the case of disabilities which have undergone some recent improvement, a rating of total disability may be made, provided:

(i) That the disability must in the past have been of sufficient severity to warrant a total disability rating;

(ii) That it must have required extended, continuous, or intermittent hospitalization, or have produced total industrial incapacity for at least 1 year, or be subject to recurring, severe, frequent, or prolonged exacerbations; and

(iii) That it must be the opinion of the rating agency that despite the recent improvement of the physical condition, *the veteran will be unable to effect an adjustment into a substantially gainful occupation.* Due consideration will be given to the frequency and duration of totally incapacitating exacerbations since incurrence of the original disease or injury, and to periods of hospitalization for treatment in determining whether *the average person could have reestablished himself or herself in a substantially gainful occupation.* [Emphasis added.]

....

§ 3.341 Total disability ratings for compensation purposes.

(a) *General.* Subject to the limitation in paragraph (b) of this section, total-disability compensation ratings may be assigned under the provisions of § 3.340. However, if the total rating is based on a disability or combination of disabilities for which the Schedule for Rating Disabilities provides an evaluation of less than 100 percent, it must be determined that the service-connected disabilities are sufficient to produce *unemployability without regard to advancing age.* [Emphasis added.]

....

§ 4.16 Total disability ratings for compensation based on unemployability of the individual.

(a) Total disability ratings for compensation may be assigned, where the schedular rating is less than total, when *the disabled person is,* in the judgment of the rating agency, *unable to secure or follow a substantially gainful occupation* as a result of service-connected disabilities: *Provided That,* if there is only one such disability, this disability shall be ratable at 60 percent or more, and that, if there are two or more disabilities, there shall be at least one disability ratable at 40 percent or more, and sufficient additional disability to bring the combined rating to 70 percent or more.... It is provided further that the existence or degree of nonservice-connected disabilities or previous unemployability status will be disregarded where the percentages referred to in this paragraph for the service-connected disability or disabilities are met and in the judgment of the rating agency such service-connected disabilities *render the veteran unemployable.*

(b) It is the established policy of the Department of Veterans Affairs that all *veterans who are unable to secure and follow a substantially gainful occupation* by reason of service-connected disabilities shall be rated totally disabled. Therefore, rating boards should submit to the Director, Compensation and Pension Service, for extra-schedular consideration all cases of *veterans who are unemployable* by reason of service-connected disabilities, but who fail to meet the percentage standards set forth in paragraph (a) of this section. *The rating*

*board will include a full statement as to the veteran's service-connected disabilities, employment history, educational and vocational attainment and all other factors having a bearing on the issue.* [Emphasis added.]

....

§ 4.19 Age in service-connected claims.

*Age may not be considered as a factor in evaluating service-connected disability; and unemployability, in service-connected claims, associated with advancing age or intercurrent disability, may not be used as a basis for a total disability rating.* Age, as such, is a factor only in evaluations of disability not resulting from service, i.e., for the purposes of pension.
[Emphasis added.]

The Court also notes the provisions of 38 C.F.R. § 4.18 (1990) relating to a veteran for whom a special job or special consideration in a job was provided because of the veteran's disability. That regulation provides in part:

§ 4.18 Unemployability.

*A veteran may be considered as unemployable upon termination of employment which was provided on account of disability, or in which special consideration was given on account of the same, when it is satisfactorily shown that he or she is unable to secure further employment.* [Emphasis added.]

## II. ANALYSIS

### A.

The regulations quoted above are in some respects duplicative and in others apparently conflicting as to whether an objective ("average person") or subjective ("the veteran") standard applies in determining "unemployability" in a particular case and whether the term "unemployability" is interchangeable with the concept of inability to follow a "substantially gainful occupation".

The Court finds the regulatory provisions relating to unemployability and total disability to be a confusing tapestry for the adjudication of claims. We believe that a clear and concise discussion by the Board of the interrelationship of these five regulatory provisions, resolving the apparent conflicts in them noted above, and of the applicability of each to the appellant's claim is necessary and is lacking here.

With respect to certain of the regulatory provisions, the Court notes that the BVA decision does not discuss the § 4.18 regulation in the context of the appellant having been reassigned by his employer to a sales position after he was unable to continue as a pressman.

Nor does the BVA decision deal with the substantial questions raised by the appellant about the extent of pain he experiences and its impact on his employability under the applicable regulations. At a September 16, 1988, outpatient visit to the Fargo VAMC medical clinic, the veteran complained to the treating physician about pain in his left leg, hip, and back and stated that the pain kept him "awake". R. at 8. On December 17, 1988, he again told that physician that he was "not sleeping at all" and had pain in his back and legs. R. at 9. The appellant claims to be in "continual" pain which at times is unbearable, making it "impossible for [him] to get around." R. at 44. Additionally, he maintains that pain from his service-connected injuries interferes with his ability to sleep and that he is unable to stand or sit for long periods of time. R. at 74–80. He believes that only the pain from his foot, knees, and back prevents him from working. R. at 74, 80.

VA regulations require that a finding of dysfunction due to pain must be "supported by adequate pathology and evidenced by the visible behavior of the claimant...." 38 C.F.R. § 4.40 (1990). The BVA decision fails to analyze the pain issue in the context of this regulation.

As to the § 4.16(a) requirement that, in order to qualify for an unemployability rating, the claimant must have "at least one disability ratable at 40 percent or more, and sufficient additional disability to bring the combined rating to 70 percent or more", it is undisputed that the appellant here satisfies both of these latter criteria.

### B.

There remain in the record many matters in dispute that were not dealt with adequately or resolved in the BVA decision.

The appellant contends—correctly, we believe—that his level of education is a factor in deciding whether or not he is employable. R. at 69. The BVA seemed to agree when it made the following finding of fact in this case: "The manifestations of the service-connected, multiple residuals of gunshot wounds involving the left lower extremity and abdomen, traumatic arthritis of the lumbar spine and each knee, and residuals of hepatitis, would not preclude the performance of all types of substantially gainful employment, consistent *with the veteran's education* level and industrial background." *Clarence T. Hatlestad*, loc. no. 932444, at 6 (BVA Dec. 6, 1989) (emphasis added). *See* 38 C.F.R. § 4.16(b) (1990), *supra.*

However, the record contains various and conflicting references to his education level: ninth grade (R. at 69, 79), high school (R. at 58), and four years of job training as a printer through the G.I. Bill of Rights (R. at 52).

The record also contains contradictions about the dates of the veteran's hospitalization at the Fargo VAMC. In support of his claim and in an attempt to demonstrate that he had, indeed, worked after his heart attack, the appellant contends that his hospitalization occurred in October 1986. R. at 69–70. On another occasion, he claimed that the hospitalization was in October 1988. R. at 51. Neither the October 1986 date nor the October 1988 date are corroborated by the treating physician, who, in a May 1989 letter, refers to a hospitalization sometime between October 1987 and May 1988. R. at 63.

There is also lack of clarity in the record about the dates of the veteran's last employment. According to the record, he last worked as a pressman between 1986 and 1987 (R. at 22, 27, 73) and was terminated from this position either prior to May 1987 (R. at 73) or on October 16, 1987 (R. at 27). He was reassigned to a sales position and worked at this job for approximately six months. R. at 22, 73. The precise period of employment is unclear. It is variously described as being between May and September 1987 (R. at 73) and January to July 1988 (R. at 22) (where it also indicates that he was self-employed as a painter in July 1988).

There is further disagreement in the record as to whether the veteran's unemployment is caused by his service-connected injuries or is a result of either his heart condition or any of his other non-service-connected disabilities. The appellant asserts that he returned to work after his hospitalization but that, due to the severity of his back and leg problems, he was unable to continue with "any type of gainful employment". R. at 70. In support of this assertion, the treating VA physician, in his May 1989 letter, concludes that the atrial fibrillation, congestive heart failure, and Meniere's disease—the appellant's non-service-connected conditions—should not result in "any restriction as far as employment is concerned at the present time." R. at 64.

The record also contains inconsistencies that pertain to the appellant's level of dysfunction from his service-connected disabilities. In August 1988, he claimed he was "virtually unemployable". R. at 23. Nonetheless, the veteran mentioned to the treating physician on September 6, 1988, that he felt "quite good", and had broken up a sidewalk with a sledgehammer and removed the debris with a tractor-trailer. R. at 7. Ten days later, on September 16, he told the physician that he did not "feel like doing anything", that his mind wandered, and that he had problems with his knees. R. at 8. In its Statement of the Case, the RO

> concede[s] that the veteran does have severe physical restriction as the result of the gunshot wound of the left lower extremity as well as gunshot wound of the abdomen and traumatic arthritis of the lumbar spine and both knees. However, we do not conclude that these disabilities in and of themselves would pre-

vent the veteran from returning to some type of gainful employment. R. at 60.

### C.

■ In order to enable a claimant to understand a decision and the reasons behind it, as well as to assist in judicial review, the BVA is required by 38 U.S.C. § 4004(d)(1) (1988) to include in its decisions "a written statement of [its] findings and conclusions, and the reasons or bases for those findings and conclusions...." *See Gilbert v. Derwinski,* 1 Vet.App. 49, 56–57 (1990); *Sammarco v. Derwinski,* 1 Vet. App. 111, 112–114 (1991). As to the statement of findings, "the Board must identify those findings it deems crucial to its decision and account for the evidence which it finds to be persuasive or unpersuasive." *Gilbert,* 1 Vet.App. at 57; *Sammarco,* 1 Vet.App. at 114. The BVA decision here failed to resolve the substantial discrepancies in the record regarding several factors which bear directly upon a finding about the appellant's capacity to work: specifically, the level of his education, the date of his hospitalization at the Fargo VAMC, and the dates of his last employment.

As to the statement of "reasons or bases", the Board must include in its decisions "the precise basis for that decision [and] the Board's response to the various arguments advanced by the claimant". *Gilbert,* 1 Vet.App. at 55–57. In *Gilbert,* we remanded the case in part because the BVA decision contained "neither an analysis of the credibility or probative value of the evidence submitted by or on behalf of the veteran in support of his claim nor a statement of the reasons or bases for the implicit rejection of this evidence by the Board." *Gilbert,* 1 Vet.App. at 59. That same deficiency is present here.

■ The "DISCUSSION AND EVALUATION" portion of the BVA decision contains only the following six sentences prior to the benefit-of-the-doubt doctrine rote recitation:

The veteran's contentions, his representative's comments, and the supportive lay statements from his acquaintances have been carefully considered in conjunction with the pertinent medical evidence of record. The veteran's descriptions of considerable functional limitations due to his service-connected musculoskeletal disabilities are found to be well supported by the clinical and radiographic findings of his low back and lower extremities. His service-connected low back and lower extremity disabilities probably prevent him from standing and walking for prolonged periods, lifting and carrying heavy objects, and bending and squatting on a repeated basis.

Nevertheless, the evidence is not found to present a likelihood that the current manifestations of the multiple, service-connected disabilities, would preclude him from carrying out all forms of substantially gainful employment, when his age and nonservice-connected medical conditions are excluded from consideration.

The fact that the veteran is currently unemployed does not establish that his service-connected disabilities prevent him from performing all types of substantially gainful employment. Both his former employer's statement about his work performance and the May 1989 medical statement about his nonservice-connected conditions have been fully considered in this regard.

*Clarence T. Hatlestad,* loc. no. 932444, at 5–6 (BVA Dec. 6, 1989).

As the above quotation from the BVA decision manifests, the decision here includes neither an analysis of "the credibility or probative value of the evidence submitted by or on behalf of the veteran in support of his claim ..." (*Gilbert,* 1 Vet. App. at 59) nor any explanation of the Board's conclusion that he is not unemployable according to those regulations that the BVA finds applicable here. For example, the veteran testified under oath before a traveling panel of the BVA on June 5, 1989. R. at 67–85. Yet, that BVA panel, which decided the case on December 5, 1989, ap-

peared to treat his sworn testimony only as a part of his arguments ("CONTENTIONS") and, as shown in the quotation above, specifically referred to that testimony as the "veteran's contentions". The Board made no express credibility determination regarding his testimony.

### D.

Section 4004(d)(1) also requires that the Board must provide its "reasons or bases" for a determination that the "veteran is not entitled to the 'benefit of the doubt' under 38 U.S.C. § 3007(b) [1988]". *Sammarco*, 1 Vet.App. at 114 (quoting *Gilbert*, 1 Vet. App. at 58–59). This unique standard of proof applicable to claims before VA provides that when "there is an approximate balance of positive and negative evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the claimant." 38 U.S.C. § 3007(b) (1988). Therefore, "when a veteran seeks benefits and the evidence is in relative equipoise, the law dictates that [the] veteran prevails.... By tradition and by statute, the benefit of the doubt belongs to the veteran." *Gilbert*, 1 Vet. App. at 54.

In the present case, despite the substantial evidence in support of the appellant's claim, the Board decision provided no "reasons or bases" with respect to the benefit-of-the-doubt doctrine, but stated only its conclusion:

> The principle of reasonable doubt has been carefully considered in this case, but the pertinent evidence is not found to be so evenly balanced that it gives rise to any reasonable doubt relative to the benefit sought on appeal.

*Clarence T. Hatlestad*, loc. no. 932444, at 6 (BVA Dec. 6, 1989). That is not enough.

### III. CONCLUSION

As this Court held in *Sammarco*, 1 Vet. App. at 113: "Whether the BVA's ultimate conclusions are correct or not, we hold that the incomplete nature of the decision below does not permit proper review by this Court." We, therefore, remand with instructions to the BVA to reconsider its decision, to make appropriate findings of fact, and "to comply promptly with the requirement of 38 U.S.C. § 4004(d)(1) that its findings and conclusions be accompanied by 'reasons or bases' adequate to explain both to the veteran and to this Court its factual findings and its conclusions that the veteran is not entitled to the 'benefit of the doubt' under 38 U.S.C. § 3007(b)" and "to identify those findings it deems crucial to its decision and account for the evidence which it finds to be persuasive or unpersuasive." *Gilbert*, 1 Vet.App. at 53, 56. "The forthcoming BVA decision should contain discrete and concise reasoned findings of fact and conclusions of law which specifically address the issues which were presented for the BVA's consideration...." *Sammarco*, 1 Vet.App. at 114.

Specifically, the BVA should address on remand the following questions and provide the reasons or bases for its findings or conclusions:

(1) The precise VA regulatory provisions applicable to the appellant's claim based on unemployability and the interrelationship of these regulations, resolving the apparent conflicts in those regulations.

(2) The inconsistencies in the record regarding (a) the education level the appellant achieved, (b) the dates of his hospitalization at the Fargo VAMC and how the evaluation and treatment at that time relate to his employment history, and (c) the dates of his last employment.

(3) The extent to which non-service-connected conditions are a cause of the appellant's unemployment and alleged unemployability, taking into account the treating VA physician's uncontroverted statement and the appellant's testimony under oath that those conditions are not the cause.

(4) The extent to which pain is a factor in the appellant's unemployment.

(5) The appellant's capacity for work, without regard to his age.

(6) The credibility of the appellant's personal, sworn testimony as evidence.

Accordingly, we retain jurisdiction, and, pursuant to 38 U.S.C. § 4052(a) (1988) and in light of *Gilbert v. Derwinski,* the record on appeal and the December 5, 1989, BVA decision is REMANDED to the Board for reconsideration and disposition in accordance with this opinion.

*It is so Ordered.*