Dennis L. **TRYTEK**, Appellant,

v.

Edward J. **DERWINSKI**, Secretary of Veterans Affairs, Appellee.

No. 91–1502.

United States Court of Veterans Appeals.

Aug. 25, 1992.

Before STEINBERG, Associate Judge.

MEMORANDUM DECISION

STEINBERG, Associate Judge.

The appellant, Vietnam veteran Dennis L. Trytek, appeals from a May 13, 1991, decision of the Board of Veterans' Appeals (BVA or Board) denying entitlement to service-connected disability compensation for post-traumatic stress disorder (PTSD). The BVA decision will be vacated and the record remanded to the BVA for expedited readjudication, including fulfillment of the duty to assist the claimant, and issuance of a new decision supported by an adequate statement of reasons or bases.

The veteran served on active duty in the United States Army from July 28, 1968, to March 2, 1970. R. at 1. He served in Vietnam with the 108th Artillery Group from February 16, 1969, to March 2, 1970. R. at 1. His service records state that his military occupational specialty was communications center specialist. R. at 2–4. His records do not indicate whether he ever engaged in combat with the enemy during his Vietnam service.

In March 1988, the veteran submitted a claim to the Veterans' Administration (now Department of Veterans Affairs) (VA) Regional Office (RO) for service-connected disability compensation for PTSD. R. at 39–40. In June and July 1989, the veteran was hospitalized for more than a month at the psychiatric unit of a VA Medical Center (MC), at which time a VA psychiatrist diagnosed him as suffering from PTSD, resulting in flashbacks about his Vietnam service. R. at 47. After his discharge from that hospitalization on July 31, 1989, the veteran was kept on daily medication for his PTSD symptoms. R. at 78. On November 13, 1989, the veteran underwent a special VA psychiatric examination for rating purposes. R. at 84–91. The examining psychiatrist, Dr. P.K. Chandarana, diagnosed the veteran as suffering from "[d]elayed post-traumatic stress disorder along with substance abuse disorder in [the] form of alcohol and polydrug abuse including Opium". R. at 87.

In a November 30, 1989, memorandum, the VARO adjudication officer returned the examination report to the examiner for clarification, stating:

Report of VA psychiatric examination must be returned because diagnosis of [PTSD] is not supported in the report. The report does not give a description of a specific stressor (or stressors) which is responsible for the claimed condition. (Simply the fact of Vietnam service is not sufficient basis for assumption of a stressor not clinically identified and/or verified by service records.) Further,

the exam report does not describe the content of veteran's reported flashbacks so that their relationship to the precipitating stressor can be clearly defined. Please furnish *amended examination report* which includes a complete (or as detailed as possible) description of the particular stressor (or stressors) responsible for the veteran's diagnosed [PTSD]. Also, please include a description of the content of veteran's symptoms, showing how they relate to the initial precipitating stressor. (In this regard, please note that veteran reported to examiner he was a truck driver in Vietnam and his service personnel records show he was a *communications specialist* with an artillery unit and was not awarded any medals or awards signifying combat duty.)

R. at 88 (emphasis in original). On December 22, 1989, Dr. Chandarana amended his November 13, 1989, examination report by writing on that report:

After reviewing my own and other reports once more I make a correction and cancel my prior diagnosis of [PTSD]— since 1) he has no clear cut symptoms[,] 2) there were no clear precipitating factors[,] 3) there is no hypersensitivity[,] or 4) there is no numbing of emotion

R. at 91.

In a January 8, 1990, statement in support of his claim, the veteran related numerous combat experiences and stressors: He stated that his unit "was often under fire and returning fire on the move", that he "directly engaged in sustained combat", that he was once blown off a bunker during a rocket attack, that on patrols after combat he saw people he had killed, and that as a truck driver he had to load his truck with body bags containing dead American soldiers. R. at 92–95. In a March 27, 1990, decision, the RO denied service connection for PTSD. R. at 96–97.

The veteran subsequently submitted several lay statements from persons who knew him prior and subsequent to his Vietnam service, and statements from a VA social worker and a VA art-therapy instructor. R. at 105–112. A November 1990 statement from Robert T. Kelly stated that he had served with the veteran in an artillery unit in Vietnam, that each soldier in their unit had been required to serve guard and patrol duties, that their base was subject to regular attacks, and that on one occasion the appellant was blown from a bunker during a rocket and mortar attack when they were on guard duty. R. at 111–12. The veteran also submitted November 1990 statements from a physician in the infectious disease section of a VAMC, that the veteran "is followed for [PTSD]" (R. at 113); from a social worker at a VA Veterans Outreach Center (Vet Center), that the veteran suffers from PTSD and had participated in Vet Center treatment programs since April 1985 (R. at 114–15); and from a Vet Center psychologist, that the veteran attends a PTSD treatment group (R. at 116).

On November 28, 1990, the veteran appeared at a personal hearing before the RO and testified under oath as to several instances of combat in Vietnam, as well as other stressful incidents. He testified that his unit had been exposed to constant shelling in Vietnam, that he once saw a jeep and three soldiers destroyed by a land mine, that he often had to load bodies in body bags onto his truck, and that he and his unit had fired upon villages in Vietnam, and that he had observed dead women and children who were killed in those attacks. R. at 117–43.

In its May 13, 1991, decision, the BVA denied service connection for PTSD, stating that "a review of the service records fails to support a finding that the veteran was exposed to combat stressors." *Dennis L. Trytek*, BVA 91–15908, at 4 (May 13, 1991). The Board stated that the veteran had "significant additional stressors in his life", including a history of drug use and serious medical conditions. The Board further stated:

Absent evidence of a significant stressor in service, in the Board's opinion, the evidence presented in this case clearly establishes that the veteran does not suffer from a [PTSD] resulting from military service.

*Trytek*, BVA 91–15908, at 5.

 The Board is required to base its decisions on "all evidence and material of

record", 38 U.S.C. § 7104(a) (formerly § 4004); 38 C.F.R. § 3.303(a) (1991), and to provide an adequate statement of the reasons or bases for its findings and conclusions. 38 U.S.C. § 7104(d)(1) (formerly § 4004). To comply with these requirements, the Board must analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any evidence favorable to the veteran. *See Abernathy v. Derwinski,* 2 Vet.App. 391, 394 (1992); *Hatlestad v. Derwinski,* 1 Vet.App. 164, 169 (1991); *Gilbert v. Derwinski,* 1 Vet. App. 49, 59 (1990). Here, the Board failed to provide its reasons for rejecting the evidence that the veteran had "engaged in combat with the enemy" and that he was exposed to significant stressful experiences in Vietnam. The Board denied the veteran's claim on the ground that there was no evidence of a significant stressful event in service. *Trytek,* BVA 91–15908, at 5. However, the Board gave no explanation for its rejection of contrary evidence in the veteran's sworn testimony and the lay statement of a former fellow serviceman.

The lay statement of Mr. Kelly and the veteran's sworn testimony relate several stressful experiences in service, including exposure to regular enemy attacks and the veteran getting blown from a bunker, witnessing the deaths of others, including civilian women and children, and handling dead bodies. R. at 111–12, 121–27, 131–33, 141. The Board was required, therefore, to give reasons or bases for its implicit rejection of this evidence which tends to prove the existence of stressors in service. *See Abernathy, supra; Hatlestad, supra; Gilbert, supra.*

■ Furthermore, the veteran testified under oath that he had engaged in "firefights" on one or two occasions, and that his unit was regularly under enemy attack. R. at 121–27. Section 1154(b) (formerly § 354) of title 38, U.S.Code, provides: "In the case of any veteran who engaged in combat with the enemy ... the Secretary [of Veterans Affairs (Secretary)] shall accept as sufficient proof of service-connec-

tion of any disease or injury alleged to have been incurred in or aggravated by such service satisfactory lay or other evidence of service incurrence or aggravation of such injury or disease, if consistent with the circumstances, conditions, or hardships of such service". Pursuant thereto, paragraph 7.46e of the M21–1 [hereinafter Manual] states: "If the evidence shows the veteran engaged in combat with the enemy and the claimed stressor is related to combat, no further development for evidence of a stressor is necessary". In *Hamilton v. Derwinski,* 2 Vet.App. 671, 674–75 (1992), the Court recently held that where, as here, there is evidence that the veteran engaged in combat with the enemy, VA is required to determine whether he or she did engage in combat with the enemy for purposes of applying paragraph 7.46e. *See Vitarelli v. Seaton,* 359 U.S. 535, 539–40, 79 S.Ct. 968, 972–73, 3 L.Ed.2d 1012 (1959) (agency required to follow its own departmental regulations); *Fugere v. Derwinski,* 1 Vet.App. 103, 107 (1990) (substantive provisions in the VA Manual have the force of law and must be followed by VA) *aff'd,* 972 F.2d 331 (Fed.Cir.1992). Where it is found that the veteran did so engage, the veteran's version of events becomes conclusive. Here, the Board failed to discuss the veteran's evidence that he had "engaged in combat with the enemy", in which case the existence of claimed combat-related stressors would be established. *See Sheets v. Derwinski,* 2 Vet.App. 512, 514 (1992) (where veteran engaged in combat with the enemy, satisfactory lay testimony as to stressors must be accepted).

■ In addition to these reasons-or-bases errors, the Board erred in failing adequately to assist the veteran in developing the facts pertinent to his claim. Pursuant to 38 U.S.C. § 5107(a) (formerly § 3007), once a claimant submits a well-grounded claim, VA has a duty to assist the claimant in developing the facts pertinent to the claim. *See Murphy v. Derwinski,* 1 Vet.App. 78, 81 (1990) (a well-grounded claim is a "plausible" claim, one capable of substantiation). Here the veteran had submitted a well-grounded claim for service connection for PTSD by virtue of a diagnosis of PTSD by

VA psychiatrists (R. at 46, 78, 87) and lay evidence and sworn testimony that the veteran had engaged in combat with the enemy and been exposed to significant stressors in service. R. at 11–12, 117–43. Therefore, the Board was required, by its duty to assist as well as the VA Manual, as discussed below, to assist him in developing facts pertinent to the claim. As explained below, the Board breached that duty by failing to seek to obtain records verifying the veteran's exposure to combat and other in-service stressors, and failing to seek records of PTSD treatment indicated in the record.

The Board concluded that there was no evidence of in-service stressors. However, it appears from the record that the Board never sought to verify the veteran's reports of combat and other in-service stressors. Provisions in the VA Manual indicate the forms of assistance that VA is to undertake to verify stressors in PTSD claims. The Manual states, in paragraph 7.46e(2): "In cases where records available to the rating board do not provide objective or supporting evidence of the alleged inservice traumatic stressor, it is necessary to develop for [purposes of seeking] this evidence." The Manual requires the rating board to request the veteran to furnish specific details as to the claimed stressor(s), including dates, places, and units of assignment at the time of the claimed stressors; and to request the service department to furnish copies of appropriate pages from the veteran's personnel file showing unit assignments and the dates of such assignments. When that evidence is compiled, the rating board is required to submit a request to the U.S. Army and Joint Services Environmental Group (ESG) for evidence supporting the veteran's claim that the claimed stressful events occurred. The Board was required, therefore, to seek verification of the claimed stressors from the ESG. *See Masors v. Derwinski*, 2 Vet. App. 181, 186–88 (1992); *Littke v. Derwinski*, 1 Vet.App. 90, 91–92 (1990).

The VA Manual further requires, in paragraph 7.46e(1): "If the veteran indicates pertinent treatment in a VA facility or elsewhere, request hospital report(s) and clinical records. If Vet Center participation is indicated, also request the Vet Center records." The provision codified what the Court has held regarding VA records of which VA is put on notice. *See Murincsak v. Derwinski*, 2 Vet.App. 363, 370–73 (1992); *Masors, supra*. The veteran here indicated that he had participated in Vet Center programs, including a PTSD group, since 1985. R. at 114–16. However, it does not appear that VA or the BVA ever sought to obtain from the Vet Center records which may suggest that he suffers from service-incurred PTSD.

Finally, the Court notes that, because the Board concluded that there was no evidence of in-service stressors, it appears not to have decided whether or not the veteran currently suffers from PTSD, whether or not related to service. The Board failed to resolve the conflict between the medical evidence that the veteran suffers from PTSD (R. at 46, 77–78, 87) and the evidence that he does not suffer from PTSD (R. at 91). If the Board, after developing the facts of the claim on remand, finds adequate proof of stressors it will be required to resolve the conflicting medical evidence. Because Dr. Chandarana's December 1989 amended diagnosis that the veteran does not have PTSD (R. at 91) is based, at least in part, upon the absence of in-service stressors, and it does not appear from the examination report that Dr. Chandarana discussed with the veteran any of the claimed in-service stressors, that report does not constitute a valid basis for a Board finding that the veteran does not suffer from PTSD.

Upon review of the record and the briefs of the parties, the Court holds that the May 13, 1991, BVA decision is vacated. The record is remanded to the Board for expedited readjudication, including fulfillment of the duty to assist, on the basis of all evidence and material of record and all applicable law and regulation, and issuance of a new decision supported by an adequate statement of reasons or bases—all in accordance with this decision. *See* 38 U.S.C. §§ 7104(a), (d)(1) (formerly § 4004); *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991);

*Gilbert, supra.* The appellant will be free to submit additional evidence and argument. Summary disposition is appropriate because the case is one "of relative simplicity" and the outcome is controlled by our precedents and is "not reasonably debatable". *Frankel v. Derwinski,* 1 Vet. App. 23, 25–26 (1990). The Court retains jurisdiction. Not later than 90 days after the date of this decision, the Secretary shall inform the Court of the status of the appellant's claim. The Secretary shall file with the Clerk (as well as serve upon the appellant) a copy of any Board decision on remand. Within 14 days after the filing of any such final decision, the appellant shall notify the Clerk whether he desires to seek further review by the Court.

VACATED AND REMANDED.