Citation Nr: 1132118 
Decision Date: 08/31/11 Archive Date: 09/07/11

DOCKET NO. 06-37 432 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUE

Entitlement to compensation under 38 U.S.C.A. § 1151 for residuals of left nephrouterectomy and left kidney stent placement and removal, to include loss of left ureter, loss of memory, loss of balance, and hearing loss claimed to have resulted from medical care provided at a VA medical facility between March 2004 and November 2004.


REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

Appellant



ATTORNEY FOR THE BOARD

K.S. Hughes, Counsel


INTRODUCTION

The Veteran served as a member of the United States Navy, retiring in March 1991 with over 20 years of active service and an additional 9 years of inactive service.

This case comes before the Board of Veterans' Appeals (the Board) on appeal from a November 2005 rating decision rendered by the Department of Veterans Affairs (VA) Regional Office in St. Petersburg, Florida (the RO). The Veteran testified at a Travel Board hearing which was chaired by the undersigned Veterans Law Judge at the St. Petersburg RO in November 2007. A transcript of the hearing has been associated with the Veteran's VA claims folder. The Board remanded this claim in April 2010.

Subsequent to the issuance of the March 2011 supplemental statement of the case (SSOC), the Veteran submitted additional evidence consisting of a personal statment which was not considered by the RO. In the June 2011 Appellant's Post-Remand Brief, the Veteran, through his representative, waived RO consideration of that evidence. Moreover, the additional evidence submitted by the Veteran is duplicative of statements previously considered. The Board may consider the appeal. 38 C.F.R. § 20.1304 (2010). 

The issues of increased ratings for service-connected traumatic changes, lumbar and thoracic spines, and residuals of cervical strain with headaches (originally granted as residuals of 1986 MVA (motor vehicle accident)) has been raised by the record (See September 2006 VA examination which relates numbness in both legs and the sciatica in the L3-S1 level to the 1986 MVA and January 2011 medical advisory opinion which relates memory problems to the Veteran's history of head trauma in a 1986 MVA that resulted in migraine headaches), but has not been adjudicated by the Agency of Original Jurisdiction (AOJ). Therefore, the Board does not have jurisdiction over such issues, and they are REFERRED to the AOJ for appropriate action.

Furthermore, the records from the Social Security Administration (SSA) show that the primary condition upon which benefits were granted was the Veteran's back condition. Since that is a service-connected disability, this is sufficient to raise a claim of entitlement to a total disability rating based on individual unemployability due to service-connected disabilities (TDIU). Roberson v. Principi, 251 F.3d 1378 (Fed. Cir. 2001) ("[o]nce a veteran submits evidence of a medical disability and makes a claim for the highest rating possible, and additionally submits evidence of unemployability, . . . VA must consider TDIU.") Such a claim has not, however, been considered by the RO or appealed to the Board. Therefore, the issue of entitlement to TDIU is also REFERRED to the RO for appropriate action. 


FINDING OF FACT

It is not shown that medical care provided at a VA medical facility between March 2004 and November 2004 resulted in additional disability due to carelessness, negligence, lack of proper skill, error in judgment, or some other instance of fault on the part of VA, or as a result of an event that was not reasonably foreseeable.


CONCLUSION OF LAW

The criteria for entitlement to compensation under the provisions of 38 U.S.C.A. § 1151 for additional disability (including loss of left ureter, loss of memory, loss of balance, and hearing loss) as a result of medical care provided at a VA medical facility between March 2004 and November 2004 have not been met. 38 U.S.C.A. §§ 1151, 5107 (West 2002 & Supp. 2010); 38 C.F.R. § 3.361 (2010).



REASONS AND BASES FOR FINDING AND CONCLUSION

Veterans Claims Assistance Act (VCAA)

The VCAA, in part, describes VA's duties to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a). The VCAA applies to the instant claim. Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and his or her representative of any information, and any medical or lay evidence, not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b); Quartuccio v. Principi, 16 Vet. App. 183 (2002). VCAA notice should be provided to a claimant before the initial unfavorable agency of original jurisdiction decision on a claim. Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006).

The Veteran was advised of VA's duties to notify and assist in the development of his claim prior to its initial adjudication. An August 2005 letter explained the evidence necessary to substantiate a claim involving 38 U.S.C.A. § 1151 benefits, the evidence VA was responsible for providing, and the evidence he was responsible for providing. A March 2006 letter also informed the Veteran of disability rating and effective date criteria. He has had ample opportunity to respond/supplement the record, and has not alleged that notice in this case was less than adequate.

In April 2010 the case was remanded for a VA medical advisory opinion and for VA and Social Security Administration (SSA) records to be secured. The Board finds that there has been substantial compliance with its remand instructions, as the VA medical advisory opinion was obtained and the VA and SSA records were secured. See Dyment v. West, 13 Vet. App. 141, 146-47 (1999); Stegall v. West, 11 Vet. App. 268, 271 (1998).

The Veteran's service treatment records (STRs) are associated with his claims file and pertinent postservice treatment records (including from the SSA) have been secured. He was afforded a VA examination in connection with his claim in September 2006 and a medical advisory opinion was obtained in February 2011. The examination report and advisory opinion (combined) are adequate for rating purposes as the examiners expressed familiarity with the pertinent medical history and the findings made included all information necessary for consideration of the applicable criteria. See Barr v. Nicholson, 21 Vet. App. 303 (2007) (VA must provide an examination that is adequate for rating purposes). The Veteran has not identified any pertinent evidence that remains outstanding. VA's duty to assist is met. Accordingly, the Board will address the merits of the claim.

Governing Law and Regulations, Factual Background, and Legal Analysis

Initially, it is noted that the Board has reviewed all of the evidence in the claims file, with an emphasis on the evidence relevant to this appeal. Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss, in detail, the extensive evidence of record. Indeed, the Court of Appeals for the Federal Circuit (Federal Circuit) has held that the Board must review the entire record, but does not have to discuss each piece of evidence. Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000). Therefore, the Board will summarize the relevant evidence where appropriate, and the Board's analysis below will focus specifically on what the evidence shows, or fails to show, as to the claim.

When a veteran suffers additional disability or death as the result of training, hospital care, medical or surgical treatment, or an examination by VA, disability compensation shall be awarded in the same manner as if such additional disability or death were service-connected. 38 U.S.C.A. § 1151; 38 C.F.R. § 3.361.

For claims filed on or after October 1, 1997, as in this case, the veteran must show that the VA treatment in question resulted in additional disability and that the proximate cause of the disability was carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on VA's part in furnishing the medical or surgical treatment, or that the proximate cause of additional disability was a event which was not reasonably foreseeable. See VAOPGCPREC 40-97; 38 U.S.C.A. § 1151.

To determine whether additional disability exists, VA compares the veteran's physical condition immediately prior to the beginning of medical or surgical treatment to the veteran's physical condition after such care has ceased. 38 C.F.R. § 3.361(b). To establish actual causation, the evidence must show that the hospital care, medical or surgical treatment, resulted in the veteran's additional disability. Merely showing that a veteran received care, treatment, or examination and that the veteran has an additional disability does not establish cause. 38 C.F.R. § 3.361(c).

To establish that fault on the part of VA caused the additional disability, it must be shown that VA hospital care, medical or surgical treatment, or examination caused the veteran's additional disability and that VA failed to exercise the degree of care that would be expected of a reasonable health care provider; or furnished the hospital care, medical or surgical treatment, or examination without the veteran's or, in appropriate cases, the veteran's representative's informed consent. 38 C.F.R. § 3.361(d).

When evaluating the evidence of record, the Board must analyze its credibility and probative value, account for evidence which it finds to be persuasive or unpersuasive, and provide reasons for rejecting any evidence favorable to the appellant. See Masors v. Derwinski, 2 Vet. App. 181 (1992); Hatlestad v. Derwinski, 1 Vet. App. 164 (1991); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

Review of the claims file shows that a January 1992 rating decision denied service connection for hearing loss on the basis that, although audio testing during service and on service separation showed mild hearing loss, hearing loss in service or on VA examination was not shown by VA standards. 

A January 1993 rating decision granted service connection for headaches as a result of an inservice 1986 automobile accident. 

A July 1996 VA audiological evaluation report notes the Veteran's complaint of problems understanding others in a noisy environment. Audiometric testing showed essentially normal hearing acuity in the right ear and only a mild loss of sensitivity at 4000 Hertz and above in the left ear. 

In his July 2005 claim for compensation under 38 U.S.C.A. § 1151 for residuals of left nephrouterectomy and left kidney stent placement and removal, the Veteran claimed additional disabilities including loss of left ureter, loss of memory, loss of balance, and hearing loss. Specifically, he claimed that the hearing loss, memory loss and loss of balance was caused by MRSA (methicillin-resistant Staphylococcus aureus) infection which he contracted while being treated for his left kidney condition. The Veteran also claimed that the VA physician left the stent in place for three months over the Veteran's objections (because on previous occasions it had been left for only two months and there had been great difficulty in removing those stents due to becoming embedded) and established protocol for such treatment within the VA medical center. He recalled that the stent was "simply ripped out of my left ureter" causing a great deal of trauma - intense pain and profuse bleeding from the urethra. The Veteran claimed that, as a result of negligent VA medical treatment, he now has a tube that goes from his left side into his left kidney and suffers from "constant blood infections and constant pain at the site where the tube enters [his] body and goes into [his] left kidney." He included photographs depicting the urine drainage tube and sack. 

The Veteran's VA and private treatment records reflect that he underwent surgery on March 22, 2004 for a left endoureterotomy, left ureteral balloon dilation and left ureteral stent placement secondary to a left ureteral stricture. An Attending Pre-Operative Progress Note notes that the Veteran "is fully aware of the indications, risks, and benefits of the planned procedure." A Surgery OP Note shows that there were no complications. On March 26, 2004 he was admitted for dehydration status post left endoureterotomy. 

At some point between March 2004 and July 2004, the Veteran had a percutaneous nephrostomy tube placement. 

On July 15, 2004, the Veteran's left ureteral stent and percutaneous nephrostomy tube were removed. The next day, the Veteran complained of left flank pain, was treated with antibiotics and the percutaneous nephrostomy tube was replaced. 

In November 2004, the Veteran underwent another percutaneous nephrostomy tube placement as well as an antegrade nephrostogram and a left retrograde pyelogram with cystoscopy. The surgical procedure note does not indicate that any complications occurred during the procedure. The pre-operative progress note indicates that the physician had reviewed with the Veteran the indications, risks and benefits of the procedure. 

Following these procedures, the Veteran became septic with onset of tachycardia, hypertension and acute renal failure. He was transferred to Shands Hospital in Gainesville, Florida from November 6, 2004 to November 29, 2004 to initiate CVVHD (continuous veno-venous hemodialysis). Treatment records from Shands note that cultures were positive for MRSA and the Veteran was treated appropriately. He was transferred back to VA care on November 29, 2004.

In a January 2005 statement, the Veteran's friend/supervisor notes that he has complained of migraine headaches during the six years of their acquaintance and these headaches have become increasingly more frequent and severe- initially they were once or twice a month and did not cause him to take leave, at present they occur 1 or more times per week and cause him to be out on leave. 

In September 2005, the Veteran underwent kidney and ureter, left, nephrectomy. 

In a December 2005 statement, the Veteran claimed that "other problems from this episode" include C (Clostridium) difficile toxin and a numbness and tingling in the lower part of his feet. [Service connection for these claims were denied in a final November 2006 rating decision.]

On September 2006 VA audiological examination, the diagnosis was mild to moderate bilateral sensorineural hearing loss and the examiner stated that he could not provide an opinion as to whether the Veteran's bilateral hearing loss was the result of his VA treatment for kidney problems between March 2004 and November 2004 because he was not a physician. 

A September 2006 VA brain and spinal cord examination report reflects examination of the Veteran, notes that his claims file was reviewed and shows familiarity with his medical history (including the Veteran's history of a 1986 MVA). The examiner concluded that the Veteran's care at the Gainesville VA for treatment of left kidney and ureteral obstruction and infections was not felt to be negligent and provided the following explanations with respect to each alleged additional disability/symptom. 

Regarding the complaints of numbness in both legs, the September 2006 VA examination report includes diagnoses of lower extremity peripheral neuropathy as well as L3-S1 radiculopathy and DJD (degenerative joint disease) of the spine. The examiner opined that the Veteran's numbness in both legs and the sciatica in the L3-S1 level is less likely as not (less than 50/50 probability) "related to multiple hospitalizations in Gainesville VA in relationship to care he received for left kidney and ureteral obstruction and infections. They began after the inservice MVA accident in 1986." Similarly, the examiner opined that the Veteran's migraine headaches are not caused by or a result of his Gainesville VA hospitalization and that they started after the MVA in 1986. [Notably, service connection has already been established for traumatic changes, lumbar and thoracic spine, and residuals of cervical strain with headaches.]

The September 2006 VA examination report includes the opinion that the repeated UTI (urinary tract infections), urosepsis, ICU (intensive care unit) stays, respiratory failure, short term hemodialysis and eventually loss of left kidney were less likely than not a result of the care the Veteran received during multiple Gainesville VA hospitalizations. The examiner explained that there were a series of unfortunate set backs in the treatment of his left ureteral obstruction by stone disease that could happen with this medical condition. 

Regarding the complaint of numbness in both feet and ankles and decreased balance, the September 2006 VA examiner opined that these symptoms are less likely than not related to multiple Gainesville VA hospitalizations for treatment of left kidney and ureteral obstruction and infections. The examiner explained that these symptoms are related to the Veteran's 15 year history of diabetes that started in the 1990s. [Notably, service connection is not in effect for diabetes and service connection for numbness and tingling, lower part of each foot, was denied in a final November 2006 rating decision.]

The September 2006 VA examination report also notes mild decrease in recent memory since the prolonged ICU stay for urosepsis, respiratory failure and renal failure. The examiner explained that the Veteran did make "essentially a full recovery from his sepsis and pneumonia and his memory is good at present." In addition, the course since onset was described as "improved" and the examiner commented that "this seems like it was a transient loss from the trauma of sepsis and fluid shifts and hemodialysis." 

During his November 2007 Travel Board hearing, the Veteran testified that he had numerous stent placements on the left side due to kidney stones. The stents were left in for two months at a time and there was always a problem getting them out. However, the last time the stents were placed, the physician instructed that they be left in for three months over the Veteran's clear objections. At the end of the three months, it was very difficult to remove the stent and it was finally "yanked" out and "destroyed" his ureter tube. Thereafter, the Veteran was unable to pass urine and a tube was put in his back, resulting in continual blood infections. He recalled that "they ran dye in both sides to take pictures" and he has no memory of that day, he went into a coma from it which lasted for a month. The Veteran was then transferred to the ICU of the Florida University Shands Hospital. He stated that they gave him hearing aids because he lost his hearing from the MRSA he contracted at the hospital (he was told the MRSA could have caused it). He also testified that he started losing his balance and had trouble walking after developing MRSA. He was also told that he had numerous heart attacks during this time. In addition, because of the damage to his left ureter, no urine can pass and his left kidney had to be taken out. The Veteran claimed that his disabilities have cascaded from the negligence of one VA doctor in deciding to leave the sent in place for three months after the Veteran had told him of the problem getting the stent out after two months. 

A January 2011 VA medical advisory opinion by a clinical psychologist reflects review of the Veteran's claims file and states that his loss of memory is less likely as not (less than 50/50 probability) caused by or a result of VA care, treatment or surgery provided in 2004. The examiner provided the following explanation of rationale:

My evaluation of the C-file revealed medical records dated 8/10/2004 noting concerns stated by Veteran's wife that he does not give himself time to recuperate from medical procedures prior to returning to employment and that he usually forgets information provided by caregivers regarding health care; medical record dated 11/04 noting that Veteran has had memory problems since a head injury in 1986; medical record dated 3/7/05 that Veteran has had migraine headaches secondary to head trauma in 1986; medical record 3/7/05 noting that Veteran has had chronic back pain since MVA in 1986; letter dated May 5, 2005 to Medical Disability Examiner reporting Veteran's mental status as memory intact for recent and remote events, excluding the period of time he was in a drug-induced coma. The C-file also disclosed diagnosis and treatment of obstructive sleep apnea, congestive heart failure, and management of chronic pain with oxycodone. Compensation and Pension exam date 6/30/2006 reported a mild decrease in recent memory following ICU stay, but no cognitive impairments; on exam Veteran recalled 2 of 3 words in an uncued memory trial. Based on a review of the C-file, it is my opinion that Veteran has multiple medical problems that in themselves can lead to mild memory impairment, and that his history of head trauma in an MVA in 1986 that resulted in migraine headaches and memory problems precedes medical problems treated through the Veterans Health Administration. 

Regarding the loss of left ureter and kidney and decreased balance claims, a January 2011 VA medical advisory opinion by a physician reflects review of the Veteran's claims file and provides the following assessment and explanation of rationale: 

[The Veteran] has an extensive urologic history. In June 2002, he had a left proximal ureteral stone. Due to the degree of obstruction, a ureteral stent was placed and removed as indicated. He required several stent placements due to persistent ureteral stricture. He required percutaneous ureteral balloon dilation 3/2004. Despite attempts to open the ureter with stents, it continued to have stricture and require hospitalizations. Veteran was admitted in 11/2004 and transferred to Shands from VA Gainesville after developing sepsis and acute renal failure requiring dialysis and ICU treatment. After hospitalization, the left ureter still revealed strictures and Veteran underwent a left nephroureterecmy [sic] on 9/23/2005. He complained of balance problems and falls after hospitalization in 11/2004. Veteran was noted to have sensory deficit in lower extremities in 2002 per neurology note. In 2006, he had an emg [electromyograph] which revealed polyneuropathy and lumbar radiculopahty. Veteran also has history of diabetes since 1993. It is the opinion of this examiner that it is less likely than not that the VA care, treatment, or surgery provided to the Veteran in 2004 resulted in his balance problems and loss of left ureter and kidney. Veteran had a very complicated urologic issue and did not respond to the usual procedures that would correct the problem. The treatment and care rendered was appropriate. Due to the nature of the disease, the surgery in 2005 was appropriate. Veteran had multiple medical problems which likely contributed to his balance problems and it would be less likely related to his treatment, care, and surgery in 2004. 

A February 2011 VA medical advisory opinion from this physician states that the Veteran's hearing loss is also less likely as not due to the care, treatment or surgery at the Gainesville VA in 2004 and explained that the Veteran was wearing hearing aids in 2001 (thus, prior to the period of VA treatment at issue). The examiner further noted that the "Veteran had extensive hospitalization in 2004 due to sepsis. It would be difficult to state that any treatment or care resulted in his progressive hearing loss vs. normal progression or other unrelated factor." The examiner concluded that the Veteran's treatment was appropriate. 

Based on the foregoing, the Board finds the most competent and probative evidence of record preponderates against a finding that the Veteran's claimed residuals of left nephrouterectomy and left kidney stent placement and removal, including loss of left ureter, loss of memory, loss of balance, and hearing loss are proximately due to the medical care provided at the Gainesville VA medical facility between March 2004 and November 2004. The weight of the evidence of record supports the Board's findings herein that the VA treatments and hospitalizations received by the Veteran were consistently appropriate and therapeutic, and did not result in any increased or additional disability due to carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on the part of VA care providers. The evidence suggests there was informed consent (the Veteran does not contend otherwise) and there is no competent (medical) evidence of the occurrence of an event not reasonably foreseeable or causation or aggravation of disease or disability beyond natural progress due to any VA treatment or hospitalization, for the Veteran's disabilities claimed herein under the provisions of 38 U.S.C.A. § 1151; 38 C.F.R. § 3.361. 

Regarding left nephrouterectomy and left kidney stent placement and removal, the September 2006 VA examiner stated that repeated UTI, urosepsis, ICU stays, respiratory failure, short term hemodialysis and eventually loss of left kidney were less likely than not a result of the care the Veteran received during multiple Gainesville VA hospitalizations and that "there were a series of unfortunate set backs in the treatment of his left ureteral obstruction by stone disease that could happen with this medical condition." Similarly, the January 2011 medical advisory opinion concluded that it is less likely than not that the VA care, treatment, surgery provided the Veteran in 2004 resulted in loss of ureter and kidney and explained that the "Veteran had a very complicated urologic issue and did not respond to the usual procedures that would correct the problem. The treatment and care rendered was appropriate. Due to the nature of the disease, the surgery in 2005 (kidney and ureter, left, nephrectomy) was appropriate." 

Regarding loss of memory, the September 2006 examiner noted a mild decrease in recent memory since the prolonged ICU stay for sepsis, respiratory failure and renal failure from which the Veteran made "essentially a full recovery" and "his memory is good at present." The January 2011 VA clinical psychologist noted that the "Veteran has multiple medical problems that in themselves can lead to mild memory impairment, and that his history of head trauma in an MVA in 1986 that resulted in migraine headaches and memory problems precedes medical problems treated through the Veterans Health Administration." Thus, although the Veteran may have loss of memory, neither examiner attributes current memory loss to VA treatment; rather, it is found to have predated such treatment. 

Similarly, the September 2006 VA examiner and January 2011 VA physician found that the Veteran's loss of balance (September 2006 examiner noted numbness in both legs and sciatica in the L3-S1 level and the January 2011 physician noted sensory deficit in lower extremities) predated the VA treatment between March 2004 and November 2004. Rather, the loss of balance (lower extremity numbness and sensory deficit) were attributed to the Veteran's 1986 MVA and history of diabetes. 

Regarding loss of hearing, the record shows that service connection for hearing loss was denied in a January 1992 rating decision (which noted a history of mild hearing loss in service) and the Janaury 2011 VA medical advisory opinion notes that the Veteran had hearing aids in 2001 (prior to the 2004 VA treatment) and it "would be difficult to state that any treatment or care resulted in his progressive hearing loss vs. normal progression or other unrelated factor." 

There are no competent (medical) opinions of record which demonstrate that the Veteran's claimed residuals of left nephrouterectomy and left kidney stent placement and removal, to include loss of left ureter, loss of memory, loss of balance, and hearing loss are due to carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault by VA in providing treatment between March 2004 and November 2004, nor is there any evidence or contention that the treatment by VA involved any unforeseen event, or that it was nonconsensual.

The Board acknowledges the Veteran's statements, as well as that of his friend/supervisor. However, there is no assertion that the Veteran or his friend/supervisor are medical professionals; thus, their lay statements alone are not sufficient to prove that his claimed residuals of left nephrouterectomy and left kidney stent placement and removal, to include loss of left ureter, loss of memory, loss of balance, and hearing loss are the result of VA carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault nor are they sufficient to prove that any additional disability was caused by an event that was not reasonably foreseeable. Espiritu v. Derwinski, 2 Vet. App. 492, 495 (1992); Grottveit v. Brown, 5 Vet. App. 91, 93 (1993). Medical diagnosis and causation involve questions that are beyond the range of common experience and common knowledge and require the special knowledge and experience of a trained physician. The Board acknowledges that the Veteran is competent in certain situations to provide a diagnosis of a simple condition; however, the Veteran is not competent to provide evidence as to more complex medical questions such as causation and negligence. See Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007); see also Woehlaert v. Nicholson, 21 Vet. App. 456 (2007). As such, the Board places greater probative value on the opinions of the VA examiners regarding causation and negligence. Id.

As a result, without competent medical evidence of record establishing that the Veteran's claimed residual disabilities are proximately due to negligent treatment by a VA medical facility between March 2004 and November 2004, his claim must be denied. See 38 C.F.R. § 3.358(c)(1).

In summary, and for the reasons and bases set forth above, the Board finds that the preponderance of the competent and probative evidence is against the Veteran's claim, the benefit-of-the-doubt doctrine is not for application, and he is not entitled to compensation under 38 U.S.C.A. § 1151.


ORDER

Entitlement to compensation under 38 U.S.C.A. § 1151 for additional disability (claimed as loss of left ureter, loss of memory, loss of balance, and hearing loss) as a result of medical care provided at a VA medical facility between March 2004 and November 2004 is denied.



____________________________________________
MICHELLE L. KANE
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs