Citation Nr: 1513867 
Decision Date: 03/31/15 Archive Date: 04/03/15

DOCKET NO. 08-18 351 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Oakland, California


THE ISSUE

Entitlement to service connection for a left hip/thigh disability, to include as secondary to service-connected degenerative disc disease (DDD) of the lumbar spine. 


REPRESENTATION

Appellant represented by: Oregon Department of Veterans' Affairs


ATTORNEY FOR THE BOARD

T. Casey, Associate Counsel



INTRODUCTION

The Veteran served on active duty from November 1965 to September 1967. This matter is before the Board of Veterans' Appeals (Board) on appeal from a February 2007 rating decision of a Department of Veterans Affairs (VA) Regional Office (RO). This matter was remanded by the Board in April 2012 for additional development. Regarding the previously remanded issue of service connection for a low back disability, a November 2012 rating decision granted service connection for DDD of the lumbar spine, rated 0 percent, effective April 2, 2007. Consequently, that matter is no longer before the Board. In March 2014, the Board again remanded this matter further development. The claim on appeal was readjudicated in an August 2014 supplemental statement of the case (SSOC). Subsequently, additional evidence was received from the Veteran; however, he provided a waiver of initial RO consideration with respect to such evidence in August 2014. 

The issues of increased rating for a service-connected low back disability (to include evaluation of any associated objective neurologic abnormalities) has been raised by the record in a statement received at the RO in September 2013, and the issues of service connection for hypertension and entitlement to a total disability rating based on individual unemployability have been raised by the record in a March 2007 statement; however, they have not been adjudicated by the Agency of Original Jurisdiction (AOJ). Therefore, the Board does not have jurisdiction over them, and they are referred to the AOJ for appropriate action. 38 C.F.R. § 19.9(b) (2014). 


FINDING OF FACT

The Veteran's current left hip/thigh disability was not manifested in service, or in the first postservice year; and the preponderance of the evidence is against a finding that it is related to his service/injury therein, or was caused or aggravated by his service-connected low back disability. 


CONCLUSION OF LAW

Service connection for a left hip/thigh disability is not warranted. 38 U.S.C.A. §§ 1110, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.310 (2014). 


REASONS AND BASES FOR FINDING AND CONCLUSION

Veterans Claims Assistance Act of 2000 (VCAA)

The requirements of 38 U.S.C.A. §§ 5103 and 5103A (West 2014) have been met. By correspondence dated in December 2006, May 2007, and May 2008, VA notified the Veteran of the information needed to substantiate his claim, to include notice of the information that he was responsible for providing and of the evidence that VA would attempt to obtain, as well as how VA assigns disability ratings and effective dates of awards. 

The Veteran's service treatment records (STRs), pertinent postservice treatment records, and Social Security Administration (SSA) records have been secured. A letter dated in March 2014 asked the Veteran to provide releases for VA to obtain his treatment records from Dr. G.P, or to obtain and submit the records himself; he has submitted copies of those records. He was afforded VA examinations in May 2002, June 2007, August 2007, and June 2012, and a VA addendum opinion was obtained in April 2014. The Board finds that the examination reports and addendum opinion, cumulatively, are adequate for adjudication purposes. See Barr v. Nicholson, 21 Vet. App. 303 (2007). The Board finds that the record as it stands includes adequate competent evidence to allow the Board to decide this matter, and that no further development of the evidentiary record is necessary. See generally 38 C.F.R. § 3.159(c)(4). The Veteran has not identified any pertinent evidence that remains outstanding. VA's duty to assist is met. 

Legal Criteria, Factual Background, and Analysis

Service connection may be granted for disability resulting from personal injury suffered or disease contracted during active military service, or for aggravation of a pre-existing injury suffered, or disease contracted, during service. 38 U.S.C.A. § 1110; 38 C.F.R. §§ 3.303, 3.304. Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). 

To establish service connection for a disability there must be evidence of: (1) a present disability for which service connection is sought; (2) incurrence or aggravation of a disease or injury in service; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1166-67 (Fed. Cir. 2004). 

Certain chronic diseases (including arthritis) may be service-connected on a presumptive basis if manifested to a compensable degree within a specified period of time postservice (one year for arthritis). 38 U.S.C.A. § 1112; 38 C.F.R. §§ 3.307, 3.309. 

Service connection is warranted for disability that is proximately due to or the result of a service-connected disability. 38 C.F.R. § 3.310(a). To establish secondary service connection for a disability there must be evidence of: (1) a current disability (for which secondary service connection is sought); (2) an already service-connected disability; and (3) that the current disability was either (a) caused or (b) aggravated by the service-connected disability. 38 C.F.R. § 3.310(a); see Allen v. Brown, 7 Vet. App. 439 (1995) (en banc). 

The Board has reviewed the Veteran's entire record with an emphasis on the evidence relevant to this appeal. Although the Board has an obligation to provide reasons and bases supporting its decision, there is no need to discuss, in detail, every piece of evidence of record. Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000). Hence, the Board will summarize the relevant evidence as appropriate, and the Board's analysis will focus specifically on what the evidence shows, or fails to show, as to the claim. 

A November 1964 induction examination report is silent for any complaints, findings, or diagnosis related to the left hip.

March 1966 STRs show that the Veteran had multiple abrasions and contusions around the left hip and thigh from a howitzer gun and carriage that ran over his left hip, lower abdomen, and right elbow. X-rays did not reveal a fracture of the pelvis or either hip. He was admitted for observation for possible internal injury. It was noted that slowly he was started on ambulation which was painful at first in the left hip but gradually improved. A week later he was noted to be much improved, and was discharged and placed on a physical profile for 3 weeks. The physical profile record indicates that he had multiple contusions of the body, and prohibited physical fitness training, duty requiring standing over 30 minutes, marching over 4 blocks, and lifting over 15 pounds. A follow up progress note from 3 weeks after his hospital discharge indicates that he was "doing well," all bruises had resolved, and that he was "still having slight difficulty with pain but not significant." In June 1966 he was found to be deployable. 

On September 1967 service separation examination, the Veteran's left hip was normal. A September 1967 report of medical history is silent for any complaints related to the left hip. 

Private treatment records from R.R., D.C., a private chiropractor, show that the Veteran reported injuries to his back while working as a butcher in January 1987, January 1990, and July 1994. In January 1990, he reported low back pain with radiation into the left posterior thigh and calf. The diagnosis was lumbar sprain/strain with secondary myospasm, facetal synovitis. In July 1994, the Veteran reported that he injured his low back when he was operating a pallet jack with an approximately 900 pound load on it and twisted wrong. He had a left-sided strain feeling and a pinching sensation in the lumbar, buttock, and lateral mid-thigh area. The diagnosis was lumbosacral strain with secondary left leg radicular neuropathy. March 1998 through March 2002 treatment records show treatment for low back pain and left leg sciatica. May 2001 MRI revealed left herniated discs of the lumbar spine. 

A July 2000 private treatment record from G.S., M.D., shows that the Veteran reported pulling a muscle on the left side of his waist when he lifted a box of meat at work. 

September 2000 private treatment records from B.M., M.D., show that the Veteran was seen for complaints of increased back pain with numbness and tingling in the left leg. 

May and June 2001 letters from J.Y., M.D., a private neurosurgeon, states that the Veteran reported low back pain since an injury in service that would occur once or twice a year. The pain was primarily in the lower lumbar region with pain and discomfort going down the posterior aspect of his left leg into his calf and foot. In June 2001, he underwent surgery for a lumbar laminectomy and excision. 

July 2001 private treatment records from Dr. J.Y. indicate that the Veteran had central low back pain radiating to the left posterior hip area. It was noted that the Veteran worked a meat cutter for 15 years and was very active with golf. A July 2001 letter from Dr. J.Y. states that the Veteran's pain and discomfort in the leg had subsided post-surgery. 

The Veteran's October 2001 claim sought service connection for a "low back condition with left leg involvement 1966." 

In an October 2001 statement, the Veteran asserted that he was run over by the left tire of a howitzer in service and was "diagnosed as paralyzed from the waist down." He stated that "doctors came in every day for 4 months sticking pins in [his] thighs and legs to see if any feeling or movement would resume," and that he "finally did start to feel some pressure from their testing after 4 months." He indicated that after completing physical therapy, he was deployed to Vietnam for a 12-month tour. He stated that he has had persistent back pain since his injury in service. 

November 2001 private treatment records from C.C., M.D., and S.S., P.T., show that the Veteran continued to have back pain with sciatic-type symptoms. 

A November 2001 letter from Dr. J.Y. states that the Veteran had some discomfort in his back, sometimes in the left buttock, and down his left leg after he stacked some wood. The diagnosis was mild sciatica. 

A January 2002 response from A.W., D.C., a private chiropractor, indicates that he does not have any records of the Veteran. 

In a March 2002 statement, the Veteran explained that he was claiming service connection for left hip/thigh conditions in addition to a "low back condition with left leg neuropathy," because his STRs "show injuries to left hip and thigh with no treatment for lumbar." 

April and May 2002 private treatment records from Dr. C.C. show that the Veteran reported pain in the left leg/buttock to the foot with no improvement following his surgery a year prior. The diagnosis was possible radicular symptoms secondary to disc or arthritis. 

On May 2002 VA examination, the Veteran reported that in 1987 while working as a butcher, he developed low back pain with left sciatic radiation, which continued for several years, with recurrences of the pain about every two or three months. He continued to have pain in the low back with numbness and weakness of the left lower extremity and partial left foot drop. The diagnosis was persistent low back pain with left-sided radiculopathy of the lower extremity following disc surgery. 

A May 2002 letter from Dr. J.Y. states that the Veteran continued to have pain and discomfort going down his left leg. June 2002 MRI of the spine revealed some postoperative changes at L4 and L5. 

A June 2002 private treatment record from M.D., M.D., states that the Veteran had pain radiating down his left thigh posterolaterally and down to his lateral aspect of his leg and left foot, which Dr. M.D. attributed to L5-S1 distribution of pain. 

A July 2002 private treatment record from S.G., M.D., shows that the Veteran reported back pain dating to his injury from getting run over by a howitzer cannon in the military. He indicated that he had temporary paralysis for approximately 2-3 weeks, was in the hospital for a total of 5 weeks, eventually recovered from his injuries, and years later went to Vietnam. The Veteran reported that his back would go out approximately every 3 months, which was initially correctable with chiropractic interventions. His primary symptoms for many years have been low back pain, stiffness, and left-sided sciatica, with pain radiating to the outside of his hip and buttock region and down his leg. The diagnoses were failed back syndrome and left L5-S1 radiculopathy. 

On August 2002 consultation (on behalf of SSA), the Veteran reported low back pain of about 25 years duration, and that approximately 2 months ago the frequency increased from occasional (2 times per year) to daily pain with symptoms into the left lower extremity. 

An August 2002 SSA disability determination indicates that the Veteran became disabled for SSA purposes in May 2001 due to disorders of the back (discogenic and degenerative). 

An August 2002 private treatment record from Dr. M.D. shows that the Veteran underwent a transforaminal epidural steroid injection in the lumbar spine for pain that radiated down his left buttock, thigh, and leg to his foot. 

VA treatment records beginning in September 2002 show complaints of sharp, shooting pain in the lower left buttocks/left foot. The Veteran reported low back pain of about 25 years duration, and that he began having pain all the way down his left leg to his foot following surgery a year and a half prior. It was noted that the Veteran had lumbar laminectomies in 2001 and 2003. 

July through September 2005 private treatment records from N.Y., M.D., a neurologist, show that the Veteran reported back pain for 4-5 years. He also reported that he was run over by a cannon in 1965, which paralyzed him from the waist down for a while, and that he fell at work in 1987. The diagnoses were low back pain and lumbosacral neuritis. 

In a March 2007 statement, the Veteran's wife indicated that that the Veteran has had back pain during their entire 34 year marriage. She stated that in his younger years his back would go out with pain going down his left leg. While on vacation in 1977 his back went out when he was bending over to pull a stake out of the sand and had to seek chiropractic treatment. She stated that there were "many such incidents...too many to count." She indicated that she believed the back pain is related to his injury in service. 

A March 2007 private medical opinion from C.B., M.D., a neuroradiologist, indicates that he interviewed the Veteran on the telephone and reviewed the Veteran's STRs, post service medical records, imaging reports, lay statements, other medical opinions, and medical literature for the purpose of making his medical opinion. Dr. C.B. opined that the Veteran's "current back (advanced degenerative hip disease - DDD) and hip (likely degenerative arthritis)...problems are due to his howitzer injury or service time experiences." He explained that the Veteran entered service fit for duty and has advanced DDD at multiple levels as per MRI scans. Citing to medical literature, Dr. C.B. stated that it is known that injuries precipitate or accelerate the onset of the degenerative process of the spine, and that injuries to the spine early in life often lead to advanced degenerative changes later in life due to the resultant chronic ligament laxity and spine instability. He further explained that the Veteran "likely has advanced degenerative changes in his left hip" as degenerative changes are common after major trauma to a joint region because ligaments in the joints respond similarly to the ligaments surrounding the spine. Dr. C.B. stated that the Veteran's record does not contain a more likely etiology for his multilevel spine disease or hip pathology. It was noted that he has pan-lumbar spine degenerative changes, which are out of proportion to his age without intervening injury. He indicated that the Veteran's intervening injury was his howitzer accident in service. Dr. C.B. noted that the Veteran had a work-related injury to his back in 1994, and opined that "had he not had his service time back injury which likely damaged his paraspinal ligaments that he would not have had as serious a spine injury as that which was he had in 1994." He explained that his service time injury likely predisposed him to re-injury of his spine in 1994 while at work. 

On June 2007 VA examination (by a physician), the Veteran reported that his left hip was injured when he was run over by a howitzer in service, and that he had paralysis of both lower extremities and regained feeling in both legs within 1-2 weeks. He separated from service after serving a tour in Vietnam and worked postservice on the assembly line for a truck manufacturer from 1967 to 1972. In 1972, he started to have gradual pain over the lower back while working in the family business of an infant wear manufacturer as a cutter, and then sought chiropractic treatment for his low back. In 1985, when the pain became severe he sought treatment at an emergency room and when he was told that X-rays of the lumbar spine showed arthritis with disc narrowing. He later worked as a butcher. It was noted that STRs did not mention paralysis of both legs, indicated that the Veteran was doing well 3 weeks after he was discharged from the hospital, and show that he denied recurrent back pain on separation from service. It was also noted that the Veteran had a postservice work-related injury in 1990. 

An August 2007 statement from Dr. C.C. indicates that the Veteran had been his patient since 1986. He stated that a consultation note from December 1982 notes the Veteran's first mentioned of his traumatic spinal injury. He indicated that records from 1982 show reports of back pain and numbness in the left leg of at least 10 years duration. Dr. C.C. stated that the Veteran continued to have significant lumbar radiculopathy, which appeared to be related to his war time injuries. 

On August 2007 VA examination (by a nurse practitioner), the Veteran reported that his left hip and thigh muscle were injured when he was run over by the tire of a howitzer in service. He had pain in the low back and bilateral hips. X-rays of the pelvis and bilateral hips revealed minimal symmetrical degenerative joint disease (DJD) and a small posttraumatic calcification lateral to the left acetabulum. On physical examination, there were no residuals of left thigh contusion/abrasion or muscle injury. The examiner opined that the Veteran's left hip/thigh condition "is not caused by or a result of" the in-service injury in March 1966. The examiner explained that the Veteran was hospitalized from March 7, 1966, to March 14, 1966, for abrasions and contusions to the left thigh, hip, and abdomen; pelvic and hip X-rays were negative. He was on profile for 3 weeks, was returned to duty, and was sent to Vietnam where he participated in combat operations. STRs are negative for any further complaint regarding the left thigh or left hip, and the subjective checklist in 1967 was negative for hip or thigh complaint. The Veteran has had extensive work-up by neurosurgeons and primary care physicians, yet has not been evaluated for a left hip condition. The examiner noted that references to left extremity pain are in regard to radicular pain from his lumbar spine condition. The examiner pointed out that Dr. C.B. provided an opinion without examining the Veteran, let alone requesting bilateral hip/pelvic X-rays to show that he has traumatic arthritis in the left hip. X-rays obtained on the current examination do not show traumatic arthritis in the bilateral hip joint space; the actual left hip joint space is well preserved without evidence of traumatic hip joint arthritis. The incidental note of small posttraumatic calcification of the left acetabulum is lateral to, not in, the joint space. It was noted that pain on the current examination was not isolated to the left hip, but was also in the low back. 

An August 2009 private treatment record from Sierra Nevada Memorial Hospital indicates that a CT scan of the abdomen and pelvis revealed a left iliac osteochondroma. 

On June 2012 VA examination (by a physician), the examiner indicated that he reviewed the entire record. It was noted that the Veteran injured his left hip when the tire of a trailer-mounted howitzer cannon ran over him in service. The diagnoses were osteoarthritis of the bilateral hips and osteochondroma (benign cartilage-covered bone growth or exostosis) of the left hip. It was noted that an August 2009 CAT scan of pelvic bones revealed left iliac osteochondroma lateral to the left acetabulum. The examiner opined that the Veteran's left hip/thigh disability "was less likely than not (less than 50 percent probability) incurred in or caused by the claimed in-service injury, event, or illness." The examiner explained that the Veteran's left hip was not an issue when he separated from the military; neither hip was. After his military career, the Veteran worked many years at various physical jobs, including automotive assembly, textile mill, and most importantly as a butcher. Those jobs gave ample opportunity to stress both hip joints, and to thereby promote formation of degenerative arthritis. The August 2007 X-rays show that there is degenerative arthritis of both hips equally. The left hip (subject to the howitzer accident) is not more arthritic than the "good" right hip that was not subject to the howitzer accident. The small calcification lateral to the left acetabulum cited on the August 2007 X-ray has turned out to be an osteochondroma, which is unrelated to the arthritis in the hip joint, because the osteochondroma is not located in the joint itself, but on the anterior/superior iliac spine area. Citing to medical literature, the examiner noted that, generally speaking, osteochondromas are a developmental defect with origin early in life. Therefore, the Veteran's osteochondroma is very unlikely to be a sequela of the howitzer accident. As both hips have degenerative arthritis, and the bilateral nature of this arthritis suggests causation not related to the unilateral one-time howitzer stress/accident which impacted the Veteran's left pelvis/hip/thigh area, nor related to any focal (involving just one hip) effect of the Veteran's present low back dysfunction. 

July 2012 through November 2013 private treatment records from G.P., M.D., note that the Veteran had pain and numbness in the low back radiating down the posterolateral aspect of the left leg. In November 2012, he had back surgery and continued to have some episodic pain in the left buttock region status post redo diskectomy L5-S1, redo decompression L4-L5 and L4-S1 instrumentation and fusion. X-rays of the lumbar spine revealed degenerative changes of the bilateral sacroiliac joints and osteoarthritis of the bilateral hip joints. 

In a February 2013 record (of follow-up status post lumbosacral spine surgery) treatment, Dr. G.P. opined that "[f]rom talking to the patient, my opinion is this is a result to the injury he sustained in the military in the 60s when he was run over by vehicle. Obviously this affected his back." 

A March 2013 statement from the Veteran's wife indicates that the Veteran has had problems with his left hip, leg, and back from the time of his accident. She stated that the Veteran's postservice work for a truck manufacturer was quite physical and he could not keep up. He then went to work for his father in the family textile mill where there was no heavy lifting. It was not until he went to work as a butcher that his back problems really came into play, and he had to have many procedures to relieve his back pain. She stated that Dr. G.P. told her that the MRIs and X-rays done in the past failed to show just how extensive the damage is. 

An April 2014 VA addendum opinion (by the June 2012 VA examiner) indicates that the Veteran's left hip osteoarthritis is "less likely than not (less than 50% probability) proximately due to or the result of" the Veteran's service-connected low back disability. The examiner explained that both hips have degenerative arthritis equal in quantitative amount based on X-rays, so whatever is the mechanism of creating that arthritis, such mechanism is working equally on both hips. The left hip is not selectively "singled out" by his service-connected DDD of the lumbar spine. The bilateral nature of the Veteran's degenerative arthritis of the hips is most likely due to one or more of the following processes: advancing age, which affects both hips equally, genetic predisposition to arthritis which affects both hips equally, or the Veteran's many years of active civilian work which would be expected to impact both hips equally. The left hip has not been singled out by the arthritic process. 

Regarding the Veteran's left hip osteochondroma, the VA examiner opined that it "is less likely than not (less than 50% probability) proximately due to or the result of" the Veteran's service-connected low back disability. The examiner explained that the lesion known as "osteochondroma" is likely unrelated to any of the Veteran's activities, and unrelated to other medical conditions within his body. Osteochondromas are considered a developmental defect with origin early in life. Citing to medical literature, the examiner noted that osteochondromas are common benign bone tumors. They probably are developmental malformations rather than true neoplasms. Their growth usually ceases when skeletal maturity is reached. The Veteran's military entrance examination overlooked the osteochondroma. It is very often non-symptomatic, and gave no reason for X-ray examination at that time. It was discovered as an incidental finding later on. In other words, the Veteran likely had his osteochondroma since before the time he entered the military, and it likely has not changed since then. Therefore, it could not be due to any of the Veteran's activities (military or civilian), nor could it be related to the Veteran's other medical issues within his body since his teenage years and puberty when his skeletal maturity was reached. 

A Wikipedia article submitted by the Veteran provides information about the M101 howitzer. 

It is not in dispute that the Veteran has a left hip disability, as osteoarthritis of the left hip and osteochondroma of the left hip were diagnosed on June 2012 VA examination. It is also not in dispute that the Veteran had a left hip and thigh injury in service. March 1966 STRs show that he sustained multiple abrasions and contusions around the left hip and thigh when he was run over by the tire of a carriaged howitzer cannon in service. What the Veteran must still show to establish service connection for a left hip/thigh disability is evidence of a nexus between his left hip/thigh disability and his injury in service, or his service-connected low back disability. 

The Veteran asserts that he has had chronic problems with his hip since his injury in service. He is competent to report his observable symptoms. However, his statements as to continuity of symptoms since his injury in service lack credibility as they contradict the contemporaneous medical evidence which does not reflect continuing hip problems. His STRs show that his left hip/thigh injury was resolving within several weeks, and that in June 1966 he was found to be deployable to Vietnam. Furthermore, the STRs, including his September 1967 service separation examination, are silent for any further complaints, treatment, findings, or diagnoses related to the left hip/thigh, despite notation of other unrelated conditions. 

Postservice treatment records do not show treatment for specific left hip or thigh complaints; they show treatment for low back pain with radiation into the left hip/thigh/buttock area and down the leg. Notably, the Veteran's private and VA treatment providers have diagnosed such complaints as radicular symptoms (sciatica) associated with his now service-connected low back disability. The preponderance of the medical evidence in the record does not show complaints or symptoms, diagnosed as a left hip/thigh disability, continuously since service. In light of the foregoing, the Board finds that the preponderance of the evidence weighs against a finding that the Veteran manifested a chronic left hip/thigh disability in service. Accordingly, service connection for a left hip/thigh disability on the basis that it became manifest in service and persisted is not warranted. 

The record does not show, and the Veteran has not alleged, that arthritis of the left hip was manifested in the first postservice year; therefore, presumptive service connection (for arthritis of the left hip as a chronic disease under 38 U.S.C.A. § 1112) is not warranted. Hip X-rays in service were negative. While Dr. C.B. noted left hip traumatic arthritis (without X-ray confirmation) many years after service, the 2007 VA examiner obtained X-rays and specifically noted that traumatic arthritis was not shown in the left hip space.

Hence, to establish service connection for a left hip/thigh disability, the Veteran must present competent evidence relating such disability to his service/injury therein, or showing that it is secondary to his service-connected low back disability. Whether his left hip arthritis may be related to remote injury in service, or to his service-connected low back disability, are medical questions not capable of resolution by mere lay observation; they require medical expertise. See Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). 

The competent evidence that directly addresses that matter of a nexus between the Veteran's left hip/thigh disability and his service, or his service-connected low back disability, is in the opinions by Dr. C.B. (supporting the claim) and by the June 2007, August 2007, and June 2012 VA examiners (against the claim). When evaluating evidence, the Board must analyze its credibility and probative value, account for evidence which it finds to be persuasive or unpersuasive, and provide reasons for rejecting any evidence favorable to the Veteran. See Masors v. Derwinski, 2 Vet. App. 181 (1992); Hatlestad v. Derwinski, 1 Vet. App. 164 (1991); Gilbert v. Derwinski, 1 Vet. App. 49 (1990). In evaluating medical opinions, the Board may place greater weight on one medical professional's opinion over another's depending on factors such as reasoning employed by the medical professionals, and whether or not and to what extent they review prior clinical records and other evidence. Gabrielson v. Brown, 7 Vet. App. 36 (1994). 

In March 2007, Dr. C.B. opined that the Veteran's "current back (advanced degenerative hip disease - DDD) and hip (likely degenerative arthritis)...problems are due to his howitzer injury or service time experiences." Dr. C.B. indicated that he reviewed STRs, post service medical records, imaging reports, the Veteran's lay statements, other medical opinions, and medical literature for the purpose of making his medical opinion. He also conducted a phone interview with the Veteran, but did not physically examine him or request imaging studies of his left hip. The Board notes that Dr. C.B. is a neuroradiologist and has specialized knowledge of interpreting imaging reports. However, he failed to identify any imaging report that shows that the Veteran "likely has advanced degenerative changes" in the left hip. Significantly, the initial documentation in the record of left hip arthritis shown by imaging studies was not until August 2007, when "minimal symmetrical" DJD of the bilateral hips was diagnosed. The Board finds that Dr. C.B.'s opinion is premised on an inconclusive finding ("likely") that was not supported by the evidence of record at the time. Further, his opinion that the Veteran likely had "advanced" degenerative changes in the left hip conflicts with the finding of "minimal" DJD several months later on the August 2007 hip X-rays and the August 2007 VA examiner's specific conclusion that traumatic arthritis was not shown in the left hip space. Additionally, the Board notes that the "symmetrical" DJD of the bilateral hips found on August 2007 X-rays appears inconsistent with the conclusion that the Veteran's in-service injury led to his current left hip arthritis (as discussed below). Consequently, the Board finds Dr. C.B.'s opinion has limited in probative value. 

The June 2007 VA examiner's opinion does not indicate a clear conclusion regarding whether the Veteran's left hip/thigh disability is related to his injury in service. Although the examiner's rationale appears to indicate that the left hip disability is not related to service, the conclusion is not clearly stated. Accordingly, the June 2007 VA examiner's opinion is of virtually no probative value. 

The August 2007 VA examiner noted that there was no evidence of a residual left thigh injury, and opined that the Veteran's left hip disability "is not caused by or a result of" the in-service injury in March 1966. The examiner's opinion reflects familiarity with the entire record, cites to findings on physical examination, provides a rationale that is consistent with the evidence of record, and points to alternate pathology for the Veteran's left hip/thigh complaints (i.e., radicular pain from his lumbar spine). Accordingly, the Board finds that the August 2007 VA examiner's opinion is probative evidence. 

The June 2012 VA examiner opined that the Veteran's left hip arthritis and osteochondroma are "less likely than not (less than 50 percent probability) incurred in or caused by the claimed in-service injury, event, or illness." In an April 2014 addendum, the VA examiner opined that the left hip arthritis and osteochondroma are "less likely than not (less than 50% probability) proximately due to or the result of" the Veteran's service-connected low back disability. The examiner's opinions reflect familiarity with the entire record, include detailed rationale with citation to supporting factual data (including that the Veteran had more likely postservice etiological factors for the arthritis, i.e., stress to both hip joints from physical work), and cite to medical literature showing that an osteochondroma is a developmental defect. Accordingly, the Board finds that the June 2012 VA examiner's opinion and April 2014 addendum, cumulatively, are highly probative in this matter. 

The Veteran specifically points to the February 2013 opinion by Dr. G.P. as support for a nexus between his left hip/thigh disability and the in-service injury. The Board notes that Dr. G.P.'s opinion relates the Veteran's service-connected low back disability (and associated radicular symptoms of episodic pain in the left buttock region) to the injury in service. However, the opinion does not indicate a nexus between a left hip/thigh disability and the Veteran's in-service injury. Therefore, Dr. G.P.'s February 2013 opinion is not probative in this matter. [The Board notes the Veteran's complaints of pain radiating to his left leg/buttock area (which treatment providers attributed to his service-connected low back disability), and is referring the issue to the AOJ for action.]

The Board has considered the statements of the Veteran and his wife which relate his left hip/thigh disability to the injury in service, and to his service-connected low back disability. Although lay persons are competent to provide opinions on some medical issues, see Kahana v. Shinseki, 24 Vet. App. 428, 435 (2011), the specific issue in this case, the existence of a current left hip disability and the etiology of orthopedic disorders, fall outside the realm of common knowledge of a lay person.

In light of the foregoing, the Board finds that the preponderance of the evidence is against a finding that the Veteran's current left hip/thigh disability is related to his service/injury therein, or was caused or aggravated by his service-connected low back disability. Accordingly, the appeal in this matter must be denied. 


ORDER

The appeal seeking service connection for a left hip/thigh disability, to include as secondary to a service-connected low back disability, is denied. 



____________________________________________
M.C. GRAHAM
Veterans Law Judge, Board of Veterans' Appeals 

Department of Veterans Affairs