﻿Citation Nr: AXXXXXXXX
Decision Date: 03/19/19 Archive Date: 03/19/19

DOCKET NO. 180814-240
DATE: March 19, 2019

ORDER

A rating in excess of 50 percent for posttraumatic stress disorder (PTSD) with alcohol abuse is denied.

Service connection for a liver disorder is denied.

Service connection for ischemic heart disease (IHD) is denied.

Service connection for left upper extremity peripheral neuropathy is denied.

Service connection for right upper extremity peripheral neuropathy is denied. 

Service connection for hypertensive heart disease is granted. 

Service connection for hypertension is granted.

As of January 29, 2015, a total disability rating based on individual unemployability due to service-connected disabilities (TDIU) is granted. 

FINDINGS OF FACT

1. For the entire appeal period, the Veteran’s PTSD with alcohol abuse has been manifested by symptomatology resulting in occupational and social impairment with reduced reliability and productivity, without more severe manifestations that more nearly approximate occupational and social impairment with deficiencies in most areas, or total occupational and social impairment. 

2. At no time during the pendency of the claim does the Veteran have a current disability related to a liver disorder, and the record does not contain a recent diagnosis of disability prior to the Veteran’s filing of a claim.

3. At no time during the pendency of the claim does the Veteran have a current disability of IHD, and the record does not contain a recent diagnosis of disability prior to the Veteran’s filing of a claim. 

4. At no time during the pendency of the claim does the Veteran have a current disability of left upper extremity peripheral neuropathy, and the record does not contain a recent diagnosis of disability prior to the Veteran’s filing of a claim.

5. At no time during the pendency of the claim does the Veteran have a current disability of right upper extremity peripheral neuropathy, and the record does not contain a recent diagnosis of disability prior to the Veteran’s filing of a claim.

6. Resolving all doubt in the Veteran’s favor, his hypertensive heart disease was aggravated by his service-connected PTSD with alcohol abuse. 

7. Resolving all doubt in the Veteran’s favor, his hypertension was aggravated by his service-connected PTSD with alcohol abuse.

8. Resolving all doubt in the Veteran’s favor, his service-connected disabilities rendered him unable to secure or follow a substantially gainful occupation as of January 29, 2015. 

CONCLUSIONS OF LAW

1. The criteria for a rating in excess of 50 percent for PTSD with alcohol abuse have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.2, 4.3, 4.7, 4.126, 4.130, Diagnostic Code 9411.

2. The criteria for service connection for a liver disorder have not been met. 38 U.S.C. §§ 1110, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.310.

3. The criteria for service connection for IHD have not been met. 38 U.S.C. §§ 1110, 1116, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309, 3.310.

4. The criteria for service connection for left upper extremity peripheral neuropathy have not been met. 38 U.S.C. §§ 1110, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.310.

5. The criteria for service connection for right upper extremity peripheral neuropathy have not been met. 38 U.S.C. §§ 1110, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.310.

6. The criteria for service connection for hypertensive heart disease have been met. 38 U.S.C. §§ 1110, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.310. 

7. The criteria for service connection for hypertension have been met. 38 U.S.C. §§ 1110, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.310.

8. As of January 29, 2015, the criteria for entitlement to a TDIU have been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.40, 3.341, 4.16. 

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Board is honoring the Veteran’s choice to participate in VA’s test program RAMP, the Rapid Appeals Modernization Program. 

The Veteran served on active duty from March 1964 to July 1970, to include service in the Republic of Vietnam. The Veteran selected the Higher-Level Review lane when he submitted the RAMP election form. Accordingly, the July 2018 RAMP rating decision considered the evidence of record as of the date VA received the RAMP election form. In August 2018, the Veteran timely appealed this RAMP rating decision to the Board and requested the Evidence Submission review lane, allowing him 90 days to submit evidence pertinent to his claims. Subsequently, in November 2018, the Veteran, through his representative, timely submitted additional evidence and argument, which is considered herein. 

In the July 2018 RAMP rating decision, the AOJ found that new and relevant evidence was submitted to warrant readjudicating the claims for service connection for hypertensive heart disease and hypertension. The Board is bound by this favorable finding. AMA, Pub. L. No. 115-55, § 5104A, 131 Stat. 1105, 1106-07. 

INCREASED RATING

1. Entitlement to a rating in excess of 50 percent for PTSD with alcohol abuse from January 29, 2015, to May 8, 2018.

The Veteran claims that his PTSD with alcohol abuse is more severe than as reflected by the currently assigned 50 percent rating. Therefore, he contends that he is entitled to a higher rating for such disability. 

Disability ratings are determined by applying a schedule of ratings that is based on average impairment of earning capacity. Separate diagnostic codes identify the various disabilities. 38 U.S.C. §1155, 38 C.F.R., Part 4. Each disability must be viewed in relation to its history and the limitation of activity imposed by the disabling condition should be emphasized. 38 C.F.R. § 4.1. Examination reports are to be interpreted in light of the whole recorded history, and each disability must be considered from the point of view of the veteran working or seeking work. 38 C.F.R. § 4.2. All reasonable doubt will be resolved in the claimant’s favor. 38 C.F.R. § 4.3. When there is a question as to which of two disability evaluations shall be applied, the higher evaluation is to be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating is to be assigned. 38 C.F.R. § 4.7. 

Separate ratings can be assigned for separate periods based on the facts found – a practice known as “staged” ratings. Fenderson v. West, 12 Vet. App. 119 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007). Staged ratings are appropriate whenever the factual findings show distinct time periods where the service-connected disability exhibits symptoms that would warrant different ratings. Id. 

The appeal period before the Board stems from the Veteran’s January 29, 2015, claim for an increased rating, plus the one-year look-back period. Gaston v. Shinseki, 605 F.3d 979, 982 (Fed. Cir. 2010). In this regard, for the entire appeal period, the Veteran’s PTSD with alcohol abuse is evaluated under the criteria of DC 9411, which provides that such disability is evaluated pursuant to the General Rating Formula for Mental Disorders at 38 C.F.R. § 4.130. 

Under DC 9411, a 50 percent rating is warranted when there is occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairments of short-and long-term memory; impaired judgment; impaired abstract thinking; disturbance of motivation and mood; and difficulty in establishing and maintaining effective work and social relationships. Id. 

A 70 percent evaluation is warranted when there is occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; intermittently illogical, obscure, or irrelevant speech; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work like setting); inability to establish and maintain effective relationships. Id. 

A 100 percent evaluation is warranted where there is total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. Id. 

The United States Court of Appeals for the Federal Circuit has held that the evaluation under 38 C.F.R. § 4.130 is “symptom-driven,” meaning that “symptomatology should be the fact-finder’s primary focus when deciding entitlement to a given disability rating” under that regulation. See Vazquez–Claudio v. Shinseki, 713 F.3d 112, 116–17 (Fed. Cir. 2013). The symptoms listed are not exhaustive, but rather “serve as examples of the type and degree of symptoms, or their effects, that would justify a particular rating.” Mauerhan v. Principi, 16 Vet. App. 436, 442 (2002). In the context of determining whether a higher disability evaluation is warranted, the analysis requires considering “not only the presence of certain symptoms[,] but also that those symptoms have caused occupational and social impairment in most of the referenced areas” - i.e., “the regulation... requires an ultimate factual conclusion as to the Veteran’s level of impairment in ‘most areas.’” Vazquez-Claudio, 713 F.3d at 117-18; 38 C.F.R. § 4.130, DC 9411. 

Further, when evaluating a mental disorder, the Board must consider the “frequency, severity, and duration of psychiatric symptoms, the length of remissions, and the Veteran’s capacity for adjustment during periods of remission,” and must also “assign an evaluation based on all the evidence of record that bears on occupational and social impairment rather than solely on the examiner’s assessment of the level of disability at the moment of the examination.” 38 C.F.R. § 4.126(a). 

The Board notes that the revised DSM-5, which, among other things, eliminates Global Assessment of Functioning (GAF) scores, applies to appeals certified to the Board after August 4, 2014, as is the case here. See 79 Fed. Reg. 45, 093 (August 4, 2014). Consequently, the Board will not consider the previously assigned GAF scores in determining the outcome of this case. See Golden v. Shulkin, 29 Vet. App. 221 (2018). 

The pertinent evidence of record related to the Veteran’s January 2015 claim for an increased rating consists of a VA examination report dated in July 2016 and the Veteran’s private and VA treatment records dated throughout the appeal period. 

VA treatment records dated from October 2014 to March 2016 reflect ongoing treatment for PTSD. Specifically, such show that the Veteran reported ongoing symptoms of anxiety and depression. However, he consistently denied suicidal and homicidal ideations. Mental status examinations revealed that he was alert and oriented, and neat and appropriately groomed. His judgement and insight appeared appropriate, he was in no apparent distress, his speech was fluent, and his affect and interaction were appropriate. Moreover, an October 2015 VA treatment record reflects that his PTSD screening test was negative. 

The Veteran was afforded a VA examination in July 2016. At such time, the Veteran reported that his girlfriend had moved out the prior spring and he was a part-time truck driver. In this regard, it was noted that he was able to maintain such part-time job despite his PTSD symptoms and alcohol abuse. He further reported that he was not participating in psychotherapy, was not taking any medications, and did not have any hospitalizations. He also indicated that his memory was 2/3. 

On examination, the examiner noted a diagnosis of PTSD with a secondary alcohol use disorder, which was found to result in occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, which is commensurate with a 30 percent rating under the General Rating Formula. In this regard, the examiner found that the Veteran’s current level impairment was moderate. He also noted that the symptoms attributable to the Veteran’s alcohol use disorder included drunkenness and unreliability, and symptoms attributable to his PTSD included depression, anxiety, re-experiencing of the two children that he shot, avoidance, hyperarousal, trauma induced nightmares/night terrors, hypervigilance, anger outburst, exaggerated startle response, feelings of detachment, avoidance of all cues associated with his trauma, and negative alterations in mood. 

The examiner further indicated that the Veteran’s psychiatric disability results in additional symptoms of depressed mood, anxiety, suspiciousness, chronic sleep impairment, disturbances of motivation and mood, difficulty in establishing and maintaining effective work and social relationships, and difficulty in adapting to stressful circumstances, including work or a worklike setting. Here, the examiner noted that the Veteran denied panic attacks; his speech was fluent and goal oriented; his abstract thinking and concentration was okay; his judgement was good; his affect was appropriate to the situation; his immediate and delayed memory was intact; his thought process was within normal limits; his personal hygiene was okay; his orientation to person, time, and place was okay; he liked to be with people; he maintained friendships; he denied hallucinations and homicidal ideations; and he experienced weekly flashbacks. 

In an April 2017 private treatment record, Dr. J.M. noted that the Veteran was very pleasant and cooperative. However, he seemed to have a limited ability to control (or inclination to adjust) how he spoke to others. The Veteran reported that he daydreamed; his short-term memory was pretty bad; he liked people and spoke to everybody; he did not have difficulty dealing with people he did not know as he sat and listened to them; he had a lot of friends; and he did not like crowds. Dr. J.M. noted that he believed the Veteran’s speech with obscenities and profanities would not be tolerated in any workplace, and his difficulty in redirecting the Veteran was evidence of the difficulty he would have staying on task. He further indicated that, without general special considerations extended by his employer, the Veteran would have difficulty in adapting to stressful circumstances such as work or a worklike setting. He further noted that the Veteran’s PTSD-related symptoms resulted in deficiencies in most areas, such as judgment, thinking, impaired impulse control, and an inability to establish and maintain effective relationships (regardless of what the Veteran may believe). Dr. J.M. concluded that he believed that the Veteran’s limitations of functioning had rendered him unable to secure and follow substantial gainful employment since at least January 2015. 

In November 2018, a Vocational Assessment from J.C., a vocational expert, was submitted. While such primarily pertains to the overall functional impact of all of the Veteran’s service-connected disabilities, it was noted that he reported the following symptoms and limitations associated with his PTSD with alcohol abuse: depression, anxiety, hypervigilance, flashbacks, intrusive thoughts, exaggerated startle response, angry outbursts, suspiciousness, difficulty getting along with others, avoidance of crowds and public spaces, avoidance of others to avoid confrontation, easily “set off” by opinions or actions in contrast to his own beliefs, prefers to say home with the exception of a few friends he likes to drink with, near daily alcohol abuse and inebriation to self-medicate depressive symptoms, poor sleep characterized by nightmares, drowsy and fatigued during the day due to poor night sleep, and difficulty with concentration throughout each day due to intrusive thoughts and depressive symptoms. 

Based on the foregoing, the Board finds that a rating in excess of 50 percent for PTSD with alcohol abuse is not warranted. In this regard, the Veteran has never reported symptoms commensurate with a 100 percent rating, nor do treatment records or examinations reflect any such symptoms. Furthermore, while he has reported some symptoms as contemplated by a 70 percent rating, such are not shown to be of a nature, frequency, duration, and severity as to result in social and occupational impairment with deficiencies in most areas. Specifically, the Veteran has consistently endorsed anger outbursts; however, despite the frequency and report severity of such anger, he has shown the ability to control such symptom to prevent periods of violence. Thus, his impulse control is intact. Additionally, while has been found to have difficulty with establishing and maintaining effective work and social relationships, he has, in fact, maintained some close relationships for long periods of time, including those with his friends. Thus, while he has some difficulty establishing and maintaining relationships, he has not been shown to be unable to do so. Furthermore, while he has been found to have difficulty in adapting to stressful circumstances, the Veteran occasionally works as a truck driver, liked to be with people, and participated in activities outside of the house, to include working in the yard and helping people. Furthermore, the remainder of the Veteran’s psychiatric symptoms noted throughout the appeal period are explicitly contemplated by the rating criteria for a 30 or 50 percent rating under the General Rating Formula. 

Moreover, regardless of the classification of the Veteran’s symptoms under the General Rating Formula, the Board finds that the totality of such, to include consideration of their nature, frequency, duration, and severity, result in, at most, occupational and social impairment with reduced reliability and productivity. In this regard, as noted previously, while the Veteran’s girlfriend had moved out during the appeal period, he enjoyed being around people and maintains close friendships. Furthermore, the record shows that the Veteran has been able to maintain employment as a part-time truck driver throughout the appeal period. In this regard, while such is not substantially gainful employment, it is clear that the Veteran’s psychiatric disability does not result in more than moderate impairment in his occupational functioning as he is able to perform the mental functions necessary to perform such job.

In reaching such conclusion, the Board affords less probative weight to the April 2017 private treatment record and November 2018 Vocational Assessment. Here, there is no indication that either Dr. J.M. or J.C. reviewed the Veteran’s claims file, including his previous treatment records. Furthermore, both Dr. J.M. and J.C. discussed medical evidence, to include examination reports, and lay statements, outside of the appeal period presently before the Board and relied upon such evidence for their conclusions reached, thereby diminishing the probative value of their assessments of the Veteran’s psychiatric disability during the relevant time frame. Moreover, the November 2018 Vocational Assessment was performed by a vocational expert who has not been shown to have expertise in the evaluation of psychiatric disabilities and, in fact, addressed the totality of the impact of all of the Veteran’s service-connected disabilities on his employability. Nonetheless, her descriptions of the functional impact of the Veteran’s PTSD with alcohol abuse is consistent with those noted by the July 2016 VA examiner. Consequently, the Board affords less probative weight to such evidence.

In contrast, the Board affords great probative weight to the July 2016 VA examination of record. In this regard, such examination was conducted by an examiner with the appropriate expertise in evaluating psychiatric disabilities, and provided a detailed description of the impact the Veteran’s PTSD and alcohol abuse have on is social and occupational functioning. Specifically, the July 2016 VA examination report reflects that the Veteran’s PTSD with alcohol abuse has been manifested by occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, which is commensurate with a 30 percent rating under the General Rating Formula and, thus, more nearly approximates his current disability rating of 50 percent rather than that of 70 or 100 percent. 

Consequently, the Board finds that the Veteran’s PTSD with alcohol abuse has been manifested by symptomatology resulting in occupational and social impairment with reduced reliability and productivity, without more severe manifestations that more nearly approximate occupational and social impairment with deficiencies in most areas, or total occupational and social impairment. As such, a rating in excess of 50 percent for such disability is not warranted. 

The Board has considered whether staged ratings under Hart, supra, are appropriate for the Veteran’s service-connected PTSD with alcohol abuse; however, the Board finds that his symptomatology has been stable throughout the time period on appeal. Therefore, assigning staged ratings for such disability is not warranted. Further, neither the Veteran nor his representative has raised any other issues, nor have any other issues been reasonably raised by the record in connection with his increased rating claim. See Doucette v. Shulkin, 28 Vet. App. 366 (2017).

In sum, the Board finds that a rating in excess of 50 percent for the Veteran’s PTSD with alcohol abuse is not warranted. In denying a higher rating, the Board has considered the applicability of the benefit of the doubt doctrine. However, as the preponderance of the evidence is against the Veteran’s claim, that doctrine is not applicable. See 38 U.S.C. § 5107; 38 C.F.R. §§ 4.3, 4.7.

SERVICE CONNECTION

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C. § 1110; 38 C.F.R. § 3.303(a). Service connection may also be established on a secondary basis for a disability which is proximately due to or the result of service-connected disease or injury. 38 C.F.R. § 3.310(a). Establishing service connection on a secondary basis requires evidence sufficient to show (1) that a current disability exists and (2) that the current disability was either (a) proximately caused by or (b) proximately aggravated by a service-connected disability. Allen v. Brown, 7 Vet. App. 439, 448 (1995) (en banc). Further, service connection may not be awarded on the basis of aggravation without establishing a pre-aggravation baseline level of disability and comparing it to the current level of disability. 38 C.F.R. § 3.310(b). 

Pertinent to a claim for service connection, such a determination requires a finding of a current disability that is related to an injury or disease in service. Watson v. Brown, 4 Vet. App. 309 (1993); see also Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992); Rabideau v. Derwinski, 2 Vet. App. 141, 143 (1992). Under applicable regulation, the term “disability” means impairment in earning capacity resulting from diseases and injuries and their residual conditions. 38 C.F.R. § 4.1; see also Hunt v. Derwinski, 1 Vet. App. 292, 296 (1991); Allen v. Brown, 7 Vet. App. 439 (1995); Saunders v. Wilkie, 886 F.3d 1356 (Fed. Cir. 2018) (the term “disability” as used in 38 U.S.C. § 1110 “refers to the functional impairment of earning capacity, not the underlying cause of said disability,” and held that “pain alone can serve as a functional impairment and therefore qualify as a disability”).

In McClain v. Nicholson, 21 Vet. App. 319, 321 (2007), the United States Court of Appeals for Veterans Claims (Court) held that the requirement of the existence of a current disability is satisfied when a claimant has a disability at the time he files his claim for service connection or during the pendency of that claim, even if the disability resolves prior to adjudication of the claim. However, in Romanowsky v. Shinseki, 26 Vet. App. 289 (2013), the Court held that when the record contains a recent diagnosis of disability prior to a claimant filing a claim for benefits based on that disability, the report of diagnosis is relevant evidence that the Board must address in determining whether a current disability existed at the time the claim was filed or during its pendency. 

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C. § 5107; 38 C.R.F. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990). 

2. Entitlement to service connection for a liver disorder, claimed as secondary to service-connected PTSD with alcohol abuse.

As an initial matter, the Board notes that the evidence does not show, and the Veteran does not contend, that a liver disorder had its onset during service, or is directly related to any aspect of his military service. Rather, he alleges that such a disorder is caused or aggravated by his service-connected PTSD with alcohol abuse. Therefore, he claims that service connection for a liver disorder is warranted.

In this regard, the Veteran’s post-service treatment records reflect that his active problems list included steatohepatitis and hepatomegaly, which began in 2005 and is associated with his long-term alcohol abuse. His remaining post-service treatment records show no complaints, treatment, or diagnosis referable to a liver disorder. Furthermore, he underwent a VA examination in July 2016, at which time he indicated that he assumed he had a liver problem based on his long history of alcohol abuse. In this regard, he described occasionally feeling discomfort in his right abdomen when he drank. 

However, upon examination, the VA examiner found that the Veteran did not have a liver disorder. Here, she reported that the Veteran had hepatomegaly on the current physical examination, but such was a physical sign and not a diagnosis. The examiner explained that hepatomegaly may be normal in some patients, but occurred mainly as a consequence of a pathologic disorder. Additionally, the examiner indicated that, while the Veteran reported a long history of alcohol use, which could certainly negatively impact the liver, there was no objective evidence of a specific diagnosis of a liver disorder. In this regard, the examiner referenced Up To Date, which noted that, “DIAGNOSIS – Alcoholic liver disease may be suspected in a patient with a compatible history who has elevated serum transaminases, a suggestion of fatty liver on imaging test, or is found to have steatosis on liver biopsy.” Here, the examiner explained that the Veteran’s AST and ALT were normal and there were no imaging tests nor had there been a liver biopsy to confirm a diagnosis of alcoholic liver disease. The examiner further explained that, nonetheless, it was at least as likely as not that the Veteran’s hepatomegaly was due to alcohol abuse. Furthermore, the examiner noted that the Veteran’s treatment records listed steatohepatitis in his problem list; however, she was unclear why such diagnosis was placed in his medical problem list for the above reasons. 

Based on the foregoing, the Board finds that the preponderance of the evidence is against a finding that the Veteran has had a disability related to a liver disorder at any time during, or prior to, the pendency of his claim. In this regard, the Board finds that the July 2016 VA examiner’s opinion that there was no evidence of a liver disorder is entitled to great probative weight as such considered all of the pertinent evidence of record, to include the statements of the Veteran. Additionally, the Board observes that the examiner’s opinion is supported by the medical records on file. Here, while the Veteran’s post-service treatment records reflect hepatomegaly and steatohepatitis in his active problems list, hepatomegaly is a physical sign and not a diagnosis, and there is no associated documentation with respect to steatohepatitis within the text of the Veteran’s medical visits, to include supporting laboratory results. Furthermore, neither the Veteran nor his representative have submitted any statements, or any other evidence, suggesting a confirmed diagnosis of a liver disorder. 

The Board has also considered the Veteran’s assertions that he currently has a liver disorder secondary to his service-connected PTSD with alcohol abuse. As a layperson, he is certainly competent to report matters within his personal knowledge, such as the occurrence of an injury or event, or his own symptoms. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007); Buchanan v. Nicholson, 451 F.3d 1331, 1336 (Fed. Cir. 2006). However, although the Veteran is competent to report his current discomfort, he is not competent to diagnose a liver disorder, or render an opinion as to the etiology of such a disorder, as this requires medical training and testing. Davidson v. Shinseki, 81 F.3d 1313 (Fed. Cir. 2009); Jandreau, supra; Woehlaert v. Nicholson, 21 Vet. App. 456 (2007) (although the claimant is competent in certain situations to provide a diagnosis of a simple condition such as a broken leg or varicose veins, the claimant is not competent to provide evidence as to more complex medical questions). In the instant case, there is no indication that the Veteran is competent to address the nature or etiology of his alleged liver disorder as he has not been shown to possess the requisite medical training, expertise, or credentials needed to render a diagnosis or opinion as to medical causation. Accordingly, the Veteran’s assertions in this regard are afforded no probative weight.

The Board finds that service connection for a liver disorder cannot be established as the Veteran does not have a current disability related to such during the pendency of his claim. In this regard, the record does not contain a competent, recent disability related to a liver disorder prior to the Veteran’s filing of a claim. See McClain, supra; Romanowsky, supra. Thus, where, as here, there is no probative evidence indicating that the Veteran has the disability for which service connection is sought, there can be no valid claim service connection. See Brammer, supra. 

For the foregoing reasons, the Board finds that service connection for a liver disorder must be denied. In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the evidence is against the claim, that doctrine is not applicable. See 38 U.S.C. § 5107; 38 C.F.R. § 3.102; Gilbert, supra.

3. Entitlement to service connection for IHD, claimed as due to exposure to herbicide agents and/or as secondary to service-connected alcohol abuse.

The Veteran is seeking service connection for IHD. Specifically, he asserts that such disorder is the result of: (1) his reported exposure to herbicide agents such as Agent Orange while serving in the Republic of Vietnam; or (2) his service-connected alcohol abuse. Consequently, the Veteran claims that service connection for IHD is warranted.

Here, the law provides a presumption of service connection for certain diseases associated with exposure to herbicide agents, and that become manifest within a specified time period, even if there is no record of evidence of such disease during the period of service. For purposes of the presumption, “herbicide agents” are 2,4-D, 2,4,5-T, and its contaminant TCDD, cacodylic acid, and picloram. 38 C.F.R. § 3.307(a)(6)(i). As relevant to the instant case, veterans who, during active military, naval, or air service, served in the Republic of Vietnam during the period beginning on January 9, 1962, and ending on May 7, 1975, are presumed to have been exposed to herbicide agents. See 38 U.S.C. § 1116; 38 C.F.R. § 3.307 (a)(6). Here, the AOJ favorably found that the Veteran is presumed to have been exposed to herbicide agents while serving in the Republic of Vietnam. 

IHD is among those diseases for which presumptive service connection is available and must manifest to a degree of 10 percent or more at any time after the last exposure to the specific herbicide agents. 38 U.S.C. § 1116(a)(2); 38 C.F.R. § 3.309(e). As such, in order to establish service connection, the Veteran must only present a current diagnosis of IHD manifested to a compensable degree. However, after carefully considering the issue in light of the evidence of record, the Board finds that the preponderance of the evidence is against the claim, as the Veteran has not been diagnosed with IHD at any time during, or prior to, the pendency of the claim. 

In this regard, the Veteran’s post-service treatment records show no complaints, treatment, or diagnosis referable to IHD. Furthermore, at September 2015 VA examination, the VA examiner found that the Veteran did not have a heart disorder upon examination. Here, the examiner indicated that a review of the medical record showed no evidence of the diagnosis or treatment for coronary artery disease/IHD, or clinically significant coronary ischemia. 

Moreover, the Veteran underwent an additional VA examination in July 2016, at which time he reported that he was told he had an enlarged heart. He further reported that, at one point, he was told that his heart went out of rhythm. He denied chest pain, but experienced shortness of breath if walking a mile in 15 minutes, experienced occasional left arm numbness and lightheadedness. Upon examination, the Veteran had left ventricular diastolic dysfunction since 2015; however, the examiner reported that such did not qualify within the generally accepted medical definition of IHD. In this regard, the examiner further reported that the Veteran had COPD and was 70 years old (elderly age). Additionally, she indicated that the Veteran did not participate in regular physical exercise and had a history of significant tobacco use. Here, the examiner explained that such factors contributed to the majority of the Veteran’s shortness of breath with activity. She further noted that the Veteran did not report any other symptoms that limited his physical activity other than shortness of breath, and had a normal ejection fraction on an echocardiogram in October 2015. 

Based on the foregoing, the Board finds that the preponderance of the evidence is against a finding that the Veteran has had a disability of IHD at any time during, or prior to, the pendency of his claim. In this regard, the Board finds that the September 2015 and July 2016 VA examiners’ opinions that there was no evidence of IHD is entitled to great probative weight as such considered all of the pertinent evidence of record, to include the statements of the Veteran. Additionally, the Board observes that the examiners’ opinions are supported by the medical records on file, which are entirely negative for a current diagnosis of IHD. Furthermore, neither the Veteran nor his representative have submitted any statements, or any other evidence, suggesting a confirmed diagnosis of IHD. 

The Board has also considered the Veteran’s assertions that he currently has IHD as a result of his confirmed exposure to herbicide agents and/or his service-connected PTSD with alcohol abuse. As a layperson, he is certainly competent to report matters within his personal knowledge, such as the occurrence of an injury or event, or his own symptoms. See Jandreau, supra; Buchanan, supra. However, although the Veteran is competent to report his current discomfort, he is not competent to diagnose IHD, or render an opinion as to the etiology of such a disorder, as this requires medical training and testing. Davidson, supra; Jandreau, supra; Woehlaert, supra. In the instant case, there is no indication that the Veteran is competent to address the nature or etiology of his alleged IHD as he has not been shown to possess the requisite medical training, expertise, or credentials needed to render a diagnosis or opinion as to medical causation. Accordingly, the Veteran’s assertions in this regard are afforded no probative weight.

The Board finds that service connection for IHD cannot be established as the Veteran does not have a current disability related to such during the pendency of his claim. In this regard, the record does not contain a recent disability of IHD prior to the Veteran’s filing of a claim. See McClain, supra; Romanowsky, supra. Thus, where, as here, there is no probative evidence indicating that the Veteran has the disability for which service connection is sought, there can be no valid claim service connection. See Brammer, supra. 

For the foregoing reasons, the Board finds that service connection for IHD must be denied. In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the evidence is against the claim, that doctrine is not applicable. See 38 U.S.C. § 5107; 38 C.F.R. § 3.102; Gilbert, supra.

4. Entitlement to service connection for left upper extremity peripheral neuropathy, claimed as secondary to service-connected PTSD with alcohol abuse.

5. Entitlement to service connection for right upper extremity peripheral neuropathy, claimed as secondary to service-connected PTSD with alcohol abuse.

As an initial matter, the Board notes that the evidence does not show, and the Veteran does not contend, that bilateral upper extremity peripheral neuropathy had its onset during service, or is directly related to any aspect of his military service. Rather, he alleges that such disorder is caused or aggravated by his service-connected PTSD with alcohol abuse. Therefore, he claims that service connection for such disorder is warranted.

In this regard, the Veteran’s post-service treatment show no complaints, treatment, or diagnosis referable to bilateral upper extremity peripheral neuropathy. Here, VA treatment records dated in October and December 2014 reflect an assessment of suspect peripheral and central neuropathy secondary to alcohol abuse, and the Veteran began long-term opiod therapy for pain due to his report of peripheral neuropathy primarily in his lower extremities and lower back. Furthermore, he underwent a VA examination in July 2016, at which time he indicated that he may get left arm numbness while sitting, which comes down from his shoulder blades to his left shoulder; however, if he moves around and lays off the cigarettes, it goes away after a few minutes. The Veteran further indicated that he did not usually have numbness/tingling in his hands. 

Upon examination, the VA examiner found that the Veteran had bilateral lower extremity peripheral neuropathy since 2016. Here, the examiner indicated that, while numbness and clumsiness of the fingers was reported, there were no objective findings of an upper extremity peripheral neuropathy. In this regard, the examiner determined that it was less likely than not that the Veteran had an upper extremity neuropathy as there was no objective evidence of such. Additionally, she noted that the Veteran did not report the characteristic symptoms for an upper extremity peripheral neuropathy. 

Based on the foregoing, the Board finds that the preponderance of the evidence is against a finding that the Veteran has had a disability of bilateral upper extremity peripheral neuropathy at any time during, or prior to, the pendency of his claims. In this regard, the Board finds that the July 2016 VA examiner’s opinion that there was no evidence of bilateral upper extremity peripheral neuropathy is entitled to great probative weight as such considered all of the pertinent evidence of record, to include the statements of the Veteran. Additionally, the Board observes that the examiner’s opinion is supported by the medical records on file, which are entirely negative for a current diagnosis of such. Furthermore, neither the Veteran nor his representative have submitted any statements, or any other evidence, suggesting a confirmed diagnosis of bilateral upper extremity peripheral neuropathy. 

The Board has also considered the Veteran’s assertions that he currently has bilateral upper extremity peripheral neuropathy secondary to his service-connected PTSD with alcohol abuse. As a layperson, he is certainly competent to report matters within his personal knowledge, such as the occurrence of an injury or event, or his own symptoms. See Jandreau, supra; Buchanan, supra. However, although the Veteran is competent to report his current discomfort, he is not competent to diagnose peripheral neuropathy, or render an opinion as to the etiology of such a disorder, as this requires medical training and testing. Davidson, supra; Jandreau, supra; Woehlaert, supra. In the instant case, there is no indication that the Veteran is competent to address the nature or etiology of his alleged bilateral upper extremity peripheral neuropathy as he has not been shown to possess the requisite medical training, expertise, or credentials needed to render a diagnosis or opinion as to medical causation. Accordingly, the Veteran’s assertions in this regard are afforded no probative weight.

The Board finds that service connection for bilateral upper extremity peripheral neuropathy cannot be established as the Veteran does not have a current disability related to such during the pendency of his claims. In this regard, the record does not contain a recent disability of such prior to the Veteran’s filing of a claim. See McClain, supra; Romanowsky, supra. Thus, where, as here, there is no probative evidence indicating that the Veteran has the disability for which service connection is sought, there can be no valid claim service connection. See Brammer, supra. 

For the foregoing reasons, the Board finds that service connection for bilateral upper extremity peripheral neuropathy must be denied. In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the evidence is against the claims, that doctrine is not applicable. See 38 U.S.C § 5107; 38 C.F.R. § 3.102; Gilbert, supra.

6. Entitlement to service connection for hypertensive heart disease, to include as secondary to service-connected PTSD with alcohol abuse.

7. Entitlement to service connection for hypertension, to include as secondary to service-connected PTSD with alcohol abuse.

The Veteran is seeking service connection for hypertensive heart disease and hypertension. Specifically, he asserts that such disorders are the result of: (1) his military service; or (2) his service-connected PTSD with alcohol abuse. Consequently, the Veteran claims that service connection for hypertensive heart disease and hypertension is warranted.

As an initial matter, the AOJ favorably found that the Veteran has current diagnoses of hypertensive heart disease and hypertension. Here, the record shows that he was first diagnosed with hypertensive heart disease (left ventricular diastolic dysfunction) in 2015, and with hypertension in 2010 (see July 2010 and July 2016 VA examination reports). 

In this regard, the Board notes that the Veteran does not allege, nor does his service treatment records (STRs) and post-service VA and private treatment records reflect that, his hypertensive heart disease or hypertension manifested during service or within the first year following his discharge from service, or that he experienced symptoms of hypertensive heart disease and hypertension continuously since service. Here, the Veteran’s STRs are silent for any complaints, treatment, or diagnoses referable to hypertensive heart disease or hypertension. Additionally, the earliest clinical evidence of hypertensive heart disease is dated in 2015, approximately 45 years after his discharge from service; and dated in 2010 for hypertension, approximately 40 years after his discharge from service. Furthermore, the lack of any lay or medical evidence of related symptoms during or continuing after service preponderates against a finding that the Veteran manifested hypertensive heart disease or hypertension in service, or the first post-service year, or experienced a continuity of symptomatology thereafter. Therefore, the Board need not further address direct service connection, or presumptive service connection based on a chronic disease. 

Thus, the remaining question is whether the Veteran’s hypertensive heart disease and/or hypertension is caused or aggravated by his service-connected PTSD with alcohol abuse. 

In this regard, the Veteran underwent VA examinations in July 2016. With respect to the Veteran’s hypertensive heart disease, the examiner found that left ventricular diastolic dysfunction could occur as a result of hypertension; therefore, it could be considered a form of hypertensive heart disease in this case based on the abnormal filling pressures on the Veteran’s October 2015 echocardiogram. The examiner further found that it was less likely than not that hypertensive heart disease was due to alcohol abuse as the Veteran’s hypertension was of multifactorial etiology, which was the case with most patients. Additionally, the examiner determined that it was at least as likely as not that hypertensive heart disease was permanently aggravated beyond normal progression by alcohol abuse as medical references indicated that chronic alcohol abuse was associated with hypertension. 

With respect to the Veteran’s hypertension, the July 2016 VA examiner indicated that hypertension most often was of multifactorial etiology (numerous risk factors are listed in Up To Date), and the risk factors in the Veteran included advancing age, overweight, lack of regular exercise, alcohol abuse, and personality traits (hyper). She also observed that the Veteran’s PTSD symptoms, such as being easily agitated (per his report during his interview), were also likely risk factors for his hypertension. Consequently, the examiner found that it was not possible to determine which one factor superseded any of the others; therefore, it was less likely than not that the Veteran’s PTSD was a major cause of his hypertension. She further concluded that it was less likely than not that the Veteran’s alcohol abuse was the major cause of his hypertension as he had numerous risk factors that in combination resulted in his hypertension.

Nonetheless, the examiner found that Up To Date indicated that there was an association between excessive alcohol intake and the development of hypertension, and hypertension was more common in patients with certain personality traits such as hostile attitudes. In this regard, she noted that association was not synonymous with causation, but concluded that it was at least as likely as not that the Veteran’s hypertension was permanently aggravated beyond normal progression due to excessive alcohol intake over time and PTSD. 

Thereafter, the July 2016 was asked to address the baseline level of severity of the Veteran’s hypertensive heart disease and hypertension. As such, in a December 2016 addendum opinion, the examiner noted the Veteran’s history of smoking and drinking alcohol for many years prior to his diagnoses, and his multiple risk factors for such diseases. The examiner concluded that her determination that alcohol abuse permanently aggravated the Veteran’s hypertensive heart disease and hypertension was didactic as the medical literature stated alcohol abuse could be a risk factor for the development of such disorders; however, as the Veteran had so many risk factors for such disorders, and due to his advanced age when diagnosed with such disorders, it could not be determined to what degree the alcohol use contributed to the hypertensive heart disease and hypertension at such time. 

The Board finds that the July/December 2016 VA examiner’s opinions regarding connections between the Veteran’s hypertensive heart disease and hypertension and his service-connected PTSD with alcohol abuse are entitled to great probative weight as such opinions considered all of the pertinent evidence of record, and provided detailed rationales for the conclusions reached, relying on and citing to the records reviewed. Moreover, the July/December 2016 VA examiner offered clear conclusions with supporting data as well as reasoned medical explanations connecting the two. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008); Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007) (“[A]medical opinion... must support its conclusion with an analysis that the Board can consider and weigh against contrary opinions”). Therefore, resolving all doubt in the Veteran’s favor, the Board finds that his hypertensive heart disease and hypertension are aggravated by his service-connected PTSD with alcohol abuse. Consequently, service connection for hypertensive heart disease and hypertension is warranted. 38 U.S.C. § 5107; 38 C.F.R. § 3.102; Gilbert, supra. 

As a final matter, the Board notes that, although 38 C.F.R. § 3.310(b) indicates that service connection may not be awarded on the basis of aggravation without establishing a pre-aggravation baseline level of disability and comparing it to the current level of disability, the next sentence indicates that the rating activity will determine the baseline and current levels of severity and determine the extent of aggravation. Given that the Board is not bound by the AOJ’s determination that aggravation is not present, and as the Board does not assign ratings in the first place, the Board reads 38 C.F.R. § 3.310(b) as permitting the Board to determine whether service connection on an aggravation basis is warranted, with the AOJ having the responsibility for determining the degree of aggravation is assigning the rating. 

TDIU

8. Entitlement to a TDIU.

Total disability ratings for compensation may be assigned, where the schedular rating is less than total, when a veteran is unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities, provided that if there is only one such disability, such disability shall be ratable as 60 percent or more, and if there are two or more disabilities, there shall be at least one disability ratable at 40 percent or more and sufficient additional disability to bring the combined rating to 70 percent or more. 38 C.F.R. § 4.16(a). 

Unlike the regular disability rating schedule, which is based on the average work-related impairment caused by a disability, “entitlement to a TDIU is based on an individual’s particular circumstances.” Rice v. Shinseki, 22 Vet. App. 447, 452 (2009). Therefore, when adjudicating a TDIU claim, VA must take into account the individual veteran’s education, training, and work history. Hatlestad v. Derwinski, 1 Vet. App. 164 (1991) (level of education is a factor in deciding employability); see Friscia v. Brown, 7 Vet. App. 294 (1994) (considering Veteran’s experience as a pilot, his training in business administration and computer programming, and his history of obtaining and losing 19 jobs in the previous 18 years); Beaty v. Brown, 6 Vet. App. 532 (1994) (considering Veteran’s 8th grade education and sole occupation as a farmer); Moore v. Derwinski, 1 Vet. App. 356 (1991) (considering Veteran’s master’s degree in education and his part-time work as a tutor).

Age may not be considered as a factor when evaluating unemployability or intercurrent disability, and it may not be used as a basis for a total disability rating. 38 C.F.R. § 4.19. There must be a determination that the service-connected disabilities are sufficient to produce unemployability without regard to advancing age or a non-service-connected disability. 38 C.F.R. §§ 3.340, 3.341, 4.16.

The sole fact that a claimant is unemployed or has difficulty obtaining employment is not enough. A high rating in itself is recognition that the impairment makes it difficult to obtain or keep employment. The ultimate question, however, is whether the Veteran is capable of performing the physical and mental acts required by employment, not whether he or she can find employment. Van Hoose v. Brown, 4 Vet. App. 361, 363 (1993).

“Substantially gainful employment” is considered “work that involves doing significant productive physical or mental duties and is done for pay or profit” even if the work “is done on a part-time basis or if a claimant is paid less, or is given less responsibility than when the same claimant worked before.” In other words a “substantially gainful occupation” is “one that provides annual income that exceeds the poverty threshold for one person, irrespective of the number of hours or days that the veteran actually works and without regard to the veteran’s earned annual income” prior to when he was last employed. See Faust v. West, 13 Vet. App. 342, 356 (2000) (citing analogous Social Security Administration regulations).

Marginal employment generally shall be deemed to exist when a veteran’s earned annual income does not exceed the amount established by the U.S. Department of Commerce, Bureau of the Census, as the poverty threshold for one person. 38 C.F.R. § 4.16 (a). Marginal employment may also be held to exist, on a facts found basis (includes but is not limited to employment in a protected environment such as a family business or sheltered workshop), when earned annual income exceeds the poverty threshold. Consideration shall be given in all claims to the nature of the employment and the reason for termination. Id.

In the instant case, the Board finds that the appeal period stems from the Veteran’s January 29, 2015, date of claim for an increased rating for his PTSD with alcohol abuse. See Rice, supra. During the appeal period, the Veteran is service-connected for the following disabilities: PTSD with alcohol abuse, evaluated as 50 percent disabling as of January 29, 2015; left lower extremity peripheral neuropathy, evaluated as 10 percent disabling as of January 29, 2015; right lower extremity peripheral neuropathy, evaluated as 10 percent disabling as of January 29, 2015; and left arm shell fragment wound residuals with scar, evaluated as noncompensable as of March 26, 2010. As service connection for the Veteran’s bilateral lower extremity peripheral neuropathy was granted as secondary to his service-connected PTSD with alcohol abuse, the disabilities may be considered to have resulted from a common etiology. 38 C.F.R. § 4.16(a). Consequently, as the Veteran’s psychiatric and peripheral nerve disabilities combine to a rating of 60 percent as of January 29, 2015, the schedular threshold criteria for a TDIU have been met. 

In connection with his claim, the Veteran submitted VA Form 21-8940, Veterans Application for Increased Compensation Based on Unemployability, in July 2015. In such application, he indicated that his PTSD prevented him from securing or following any substantially gainful occupation. He reported that he last worked full-time in January 2010 as a truck driver with Lou Summerville Trucking and became too disabled to work in August 2010. In this regard, the Veteran reported that he had severe road rage and could not handle driving trucks anymore. He further reported that he got into fights with the dispatcher and would refuse to work and was not good with taking orders. He further indicated that he had not sought employment since he became too disabled to work and denied having any education or training beyond four years of high school. The Veteran additionally submitted an updated VA Form 21-8940 in June 2016, in which he indicated that he was seasonally employed as a truck driver for Crop Production Services, Inc. In this regard, upon a review of the records submitted in regard to such employment and J.C.’s determination in her November 2018 assessment, which will be discussed in detail below, that such constituted a protected work environment due to the accommodations made to him, the Board finds that such employment is, at most, marginal in nature.

As discussed previously, the Veteran’s PTSD results in occupational and social impairment with reduced reliability and productivity. In this regard, the July 2016 VA examiner indicated that he had difficulty in establishing and maintaining effective work relationships, and difficulty in adapting to stressful circumstances, including work or a worklike setting. Additionally, the Veteran reported that he worked part-time as a truck driver, had lost a lot of work due to alcoholism, and drank heavily to adapt to stress at work; however, he also liked to be with people at work. Furthermore, at a July 2016 VA examination, it was noted that the Veteran’s bilateral lower extremity peripheral neuropathy resulted in pain and early decreased sensation in his feet. In light of such symptoms, the examiner noted that the Veteran needed to be careful on ladders and driving company vehicles, and should not routinely work over three feet high or on uneven ground. 

Furthermore, in the November 2018 Vocational Assessment, J.C., a vocational expert, indicated that the Veteran’s records were consistent with an individual who was unable to secure and follow a substantially gainful occupation due to his service-connected PTSD, alcohol abuse, and bilateral lower extremity peripheral neuropathy. Here, she reported that the functional impacts of the Veteran’s symptoms and limitations were incongruent with competitive employment, including unskilled employment. J.C. explained that the Veteran’s PTSD symptoms, including depression, anxiety, hypervigilance, flashbacks, exaggerated startle response, difficulty with concentration, and chronic sleep impairment prevents him from sustaining the focus and attention required of competitive employment. She further explained that his near daily inebriation secondary to PTSD further precluded him from concentrating and focusing on work tasks and an inability to sustain focus and attention to complete work tasks resulted in reduced workplace productivity. Additionally, J.C. indicated that the Veteran’s PTSD symptoms of anger, suspiciousness, and avoidance affected his ability to establish and maintain effective workplace relationships. She also noted that his depressive symptoms caused him to self-medicate with alcohol, leading to inebriation on a daily basis, which would likely result in missing work well above the general employer tolerance of one absence or tardy per month. 

J.C. also reported that the symptoms and limitations of the Veteran’s bilateral lower extremity peripheral neuropathy, including intermittent pain, burning, tingling, and daytime drowsiness as a side effect of prescribed Tramadol, reduced his ability to secure and follow substantially gainful employment. 

Ultimately, J.C. concluded that the Veteran would more likely than not have difficulty with the very basic requirements in maintaining substantially gainful employment due to his service-connected disabilities. Here, she explained that the Veteran’s part-time short-haul trucking position in May 2015 to approximately one year ago constituted a protected work environment due to the accommodations made to him. Therefore, J.C. found that the Veteran’s service-connected PTSD, alcohol abuse, and bilateral lower extremity peripheral neuropathy rendered him unable to maintain appropriate workplace relationships, unable to sustain the concentration and focus required of competitive employment, and unable to attend to a regular workplace schedule. 

Based on the foregoing, the Board resolves all doubt in the Veteran’s favor and finds that he is unable to secure and follow a substantially gainful occupation due to his service-connected disabilities, specifically his PTSD with alcohol abuse and bilateral lower extremity peripheral neuropathy. In this regard, the Veteran has provided competent and credible evidence as to how his symptoms interfere with his ability to work. Furthermore, while the July 2016 VA examiners did not consider the collective impact of the Veteran’s service-connected disabilities, such examination reports reflect the nature of the limitations associated with each service-connected disability of PTSD with alcohol abuse and bilateral lower extremity peripheral neuropathy. In this regard, such support his claim for a TDIU as the examiners conceded that the Veteran’s individual service-connected disabilities, while not rendering him unemployable on an individual basis, had significant effects on his usual occupation. Moreover, based on the combination of medical findings provided in the VA examinations, as well as the Veteran’s lay statements regarding the limitations of his PTSD with alcohol abuse and bilateral lower extremity peripheral neuropathy, J.C. found that such service-connected disabilities rendered him unable to secure or follow a substantially gainful occupation. Thus, the Board resolves all doubt in favor of the Veteran and finds that a TDIU is warranted as of January 29, 2015. 

 

A. JAEGER

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD Koria B. Stanton, Associate Counsel